ISAAC K. REED, Appellant, v. THE STATE OF NEW YORK. Respondent.

For the purpose of providing a feeder for the Erie canal the state constructed a dam across a valley, forming a reservoir, wherein the water rose to a height of about thirty feet. In the work of construction the soil was removed from the slope forming one side of the reservoir, exposing a bed of coarse gravel, through which, when the water rose in the reservoir to that height, the water flowed and was discharged upon the lands of owners below the dam, inflicting serious damage, which has been continuous since the water was let into the reservoir. Upon claim presented to recover the damages *held*, that the state was chargeable with negligence in the construction of the reservoir and its embankments and the claimant was, under the act of 1870 (Chap. 321, Laws of 1870), entitled to an award for such damages.

*It seems* the rules regulating the rights and liabilities of adjacent owners of land with reference to interference with underground currents and streams have no application to a case like this.

The attempt to collect a large body of water into a limited space surrounded with a porous and gravelly soil, without taking any adequate

precaution to confine it to the receptacle prepared for it, is negligence, and for damages resulting therefrom to adjoining owners the person chargeable with the negligent act is liable.

Also, *held*, that as the claim was not maintainable on the theory of a permanent appropriation of the land flooded, but was for injuries inflicted from time to time, it was not barred by the statute of limitations as to damages inflicted within the period of the statutory limitation.

(Submitted January 20, 1888; decided February 28, 1888.)

APPEAL from award of the Board of Claims made September 10, 1884, which allowed nothing to the claimant upon a claim for damages to his lands in Onondaga county, alleged to have been caused by water percolating from the "Jamesville Reservoir."

The material facts are stated in the opinion.

*T. E. Hancock* for appellant. The liability of the state is the same as would be that of an individual or corporation under similar circumstances. (*Sipple* v. *The State*, 99 N. Y. 284.) The liability of the party causing the land of another to be inundated under the circumstances here cannot be doubted. It matters not whether the damage is occasioned by overflow or percolation. (*Pixley* v. *Clark*, 35 N. Y. 520; *Brown* v. *Bowen*, 30 id. 519.) The claimant has a cause of action for a continuance of the nuisance. (*Wagoner* v. *Germaine*, 3 Den. 306, 312; *Brown* v. *C. & S. R. R. Co.*, 12 N. Y. 486; *Plate* v. *N. Y. C. R. R. Co.*, 37 id. 472; Angell on Limitations, § 300; Wood on Limitations, § 180; *Vogel* v. *Mayor*, etc., 92 N. Y. 10.) The claimant's only evidence concerning the pecuniary amount of the damage to his land was that it was worth $700 or $800 less on account of the overflow. This was uncontradicted on the trial and was received by the court without objection on the part of the state, and should stand as the measure of damages. (*Flora* v. *Carbeau*, 38 N. Y. 111; *Quin* v. *Lloyd*, 41 id. 349; *In re Yates*, 94 id. 59.) Even if it be held that the state must be deemed to have pleaded the Statute of Limitations, it was bound to raise that point on the trial. (Laws

1884, chap. 50, § 7; *Bommer* v. *Am. Spiral Man. Co.*, 81 N. Y. 469; Code, § 413; *Sauls* v. *St. John*, 36 Barb. 628; *Dezengremel* v. *Dezengremel*, 24 Hun, 457; *Johnson* v. *A. & S. R. R. Co.*, 54 N. Y. 416; *Francis* v. *Schoellkopf*, 53 id. 152; *Staples* v. *Springs*, 9 Hun, 517; Laws 1883, chap 205, § 10.)   If a judgment for the plaintiff is necessary to vindicate any right drawn in question, a new trial will be granted, though the plaintiff be entitled to nominal damages only. (1 Sutherland on Damages, 815; *Herrick* v. *Storer*, 5 Wend. 190; *McCarty* v. *Leggett*, 3 Hill 134.)

*Charles F. Tabor*, attorney general, for respondent.   There was no negligence on the part of the state in the construction and maintenance of the reservoir, dam and embankment from which the injuries to claimant's property arose.   (*Hoffman* v. *Tuolomne County Water Co.*, 10 Cal. 413; *Wolf* v. *St. Louis Ind. Water Co.*, 10 id. 541; *Inhab'ts of Shrewsbury* v. *Smith,* 12 Cush. 177; *Blyth* v. *Birmingham Water-Works Co.*, 11 Exch. 781; *Campbell* v. *Bear River Co.*, 35 Cal. 679; *Rockwood* v. *Wilson*, 11 Cush. 221; *Moyer* v. *N. Y. C. R. R. Co.*, 88 N. Y. 351.)   The damages alleged to have been sustained being in consequence of the percolation of sub-surface flow of water from the lands of the state, as none of the claimant's lands adjoin those of the state, it cannot be made liable. (*Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Ellis* v. *Duncan*, 21 Barb. 230; *Delhi* v. *Youmans*, 45 N. Y. 362; *Goodale* v. *Tuttle*, 29 id. 456; *Phelps* v. *Nolan*, 72 id. 39; *Barclay* v. *Wilcox*, 86 id. 40; *Harwood* v. *Benton*, 32 Vt. 724; *Penn. Coal Co.* v. *Sanderson*, 113 Penn. St. 126.) These claims are all barred by the Statute of Limitations. (Laws of 1830, §§ 1, 2, 3; 1 R. S. [7th ed.], 642, §§ 46, 48; *Marks* v. *The State*, 97 N. Y. 580.)   The work constructed by the state, and from which it is claimed that these injuries resulted, having been done in pursuance of the statute, and having been properly and carefully constructed in accordance with the plans and specifications adopted by the state, there can be no liability for any consequential damages arising out

of any inherent defect in the manner of said construction. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42, 49; *Radcliffe's Ex'rs* v. *Mayor, etc.*, 4 id. 195; *Lynch* v. *Mayor, etc.*, 76 id. 60; *Conckling* v. *N. Y. O. & W. R. R. Co.*, 102 id. 107; *Heiser* v. *Mayor, etc.*, 104 id. 72; *Monk* v. *Town of New Utrecht*, 104 id. 552.)

RUGER, Ch. J.    Prior to the year 1873 the state became the owner of about 160 acres of land in the town of Lafayette, Onondaga county, lying in a valley on both sides of Butternut creek. For the purpose of providing a feeder for the Erie canal it proceeded, through its own agents, without the intervention of contractors, to construct a dam across the valley, by which means a large body of water, covering about sixty or seventy acres of land to a depth of thirty feet or less, was collected in a reservoir, and there retained and used, as occasion required, for the canal. In the course of the construction of the reservoir a large bed of coarse gravel, lying on the westerly side of the dam and extending over four or five acres of land, was uncovered and denuded of soil and earth and left exposed directly to the action of the water upon it. This bed of gravel lay about four or five feet below the level of the spill-way of the dam, and when that was filled, large quantities of water flowed through the gravel, by subterraneous channels and discharged itself upon the lands of the claimant and others lying below the dam, and inflicted serious damage thereto. The water was first let into the dam in 1874 or 1875, and immediately thereafter appeared upon the premises described, and has so continued to appear and to injure the claimant's land each year since. This claim was filed with the Board of Appraisers in 1879, and was transferred, together with other claims, to the Board of Claims, when that body was created by statute in 1883. Upon the trial the Board of Claims, besides finding the facts above stated also found that the reservoir, dam and embankment were constructed, maintained and operated with great care and diligence on the part of the state, its officers, agents and servants, and that it does not appear that

the damage to lands of claimant is permanent, nor does the amount of any temporary damage he may have sustained appear. As a conclusion of law it found "that the state was not bound to assume that a deposit of gravel extended beneath the surface, from the land inside of said reservoir, across other lands, and at a distance of over one hundred rods, to the land of claimant, and to provide absolutely against the percolation of the water from the reservoir through the same," and, therefore, they awarded the claimant nothing.

We are of the opinion that the undisputed evidence in the case shows that the board erred in exempting the state from the imputation of negligence in the construction of the reservoir and its embankments.

The liability assumed by the state under chapter 321 of the Laws of 1870, embraces all cases of damage occurring to corporations and individuals from the use or management of the canals of the state, or resulting or arising from the negligence or conduct of any officer of the state having charge thereof, or from any accident or other matter or thing connected with the canals in a case where the facts proved would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation, and providing that it is not a case of damages arising from the navigation of the canals. In cases arising under this statute the state is therefore to be regarded as occupying the same position as an individual, and the inquiry is solely whether the facts proved would render an individual liable if established against him. The situation of the gravel bank skirting the western embankment of the reservoir was plainly visible to every one, and was known to the agents of the state while prosecuting the work of construction. Instead of taking precautions to avoid leakage at this point they continued the work of denudation until many acres were exposed to the action of the water. That water, however situated, will seek its level through any channel open to it is a natural law, with which every one is familiar and could not have been unknown to the officers having charge of this work. The attempt to collect a

large body of water into a limited space surrounded with a porous and gravelly soil, without taking adequate precaution to confine it to the receptacle prepared for it, was, upon the face of it, an inexcusable act of negligence in those having charge of such work, and cannot be justified under the known laws governing the motion of fluids. (*Pixley* v. *Clark*, 35 N. Y. 520 ; *Jutte* v. *Hughes*, 67 id. 267 ; *Mairs* v. *Manhattan R. E. Assn.*, 89 id. 506.)

Indeed one of the state engineers upon the work testified that when they were uncovering the bank on the western side of the reservoir, he observed they were getting into a bed of coarse gravel, and that it might leak if they went deeper. Another engineer employed in superintending the construction stated that he observed what was going on in regard to this gravel bed, and told the canal commissioner in charge of the work, that he didn't think they would be able to keep any water in the reservoir above this point. He further testified that the effect of removing the soil and earth from the gravel was to open a channel where all of the water from the reservoir might run out, but that if it had been "suitably lined with clay a large body of which was found within the limits of the reservoir, it would not leak."

The only excuse suggested by the engineers for not lining it was the large expense which the state would incur by doing so. The officers of the state seem to have proceeded with their work, well knowing that they had exposed sub-surface channels of vast extent through which the collected waters of the reservoir must flow off and discharge at some point, when its level was reached. That they did not know it would flood the land of the claimant was entirely immaterial, since they must have known that it would discharge upon somebody's land and was liable to inflict damage thereto.

There was no evidence that conflicted in any way with the facts stated, and the only attempt to palliate its force was made by calling one of the engineers of the canal department to testify to his opinion that the work of building the dam and reservoir was done according to the plans and specifica-

tions   No plans and specifications were produced on the trial, and the witness does not state that he ever saw them.   One of the engineers testified that there were no specifications relating to the exposed gravel.   The witness was permitted, under such circumstances, to state that the work was performed by the officers of the state with great care, and the dam was constructed in a good, safe and workman-like manner.   Such testimony does not produce a conflict of evidence upon the point in dispute, within the meaning of the rule precluding this court from reviewing a question of fact; on the contrary it leaves the facts unanswered and undisputed, and the legal conclusion to be predicated thereon a question of law alone. In a case quite analogous to this, which came to this court from the Board of Claims, its conclusion of fact in regard to the liability of the state for damages occasioned by percolations of water through the banks of the canal, from defective precautions to restrain such waters, was just the reverse of that arrived at in this case.

In *Clements* v. *The State* (105 N. Y. 621), in which the award was affirmed in this court, it held the state liable for not properly puddling the banks of the canal after raising the level of the water in the canal.   In the cases of *Heacock* v. *The State* (105 N. Y. 246), *Avery* v. *The State* (id. 636), and *Collins* v. *The State* (id. 641), a refusal to award damages for such percolations was reversed by this court and the claims sent back for a rehearing upon the merits.   It is proper to say, however, that the refusal of the Board of Claims to make awards in the latter cases did not proceed upon the question of negligence or want of care on the part of the state officers, but was based mainly upon the Statute of Limitations.   But this court held in each of those cases that evidence showing that the water in the canals had been raised by the state in such a manner as to cause them to percolate through the banks and flow upon the premises of adjacent owners to their injury, required a hearing of the case upon the merits by such board.

The rules regulating the rights and liabilities of adjacent

owners of land with reference to interference with underground currents and streams, have no application to the questions here presented. (*Pixley* v. *Clark, supra*; *Village of Delhi* v. *Youmans*, 45 N. Y. 362.) It does not at all follow from the right that a land owner has, of lawfully digging on his own land for his own use, even though he thereby interrupts a subterranean current which feeds his neighbor's well or spring, that he has also a right to divert running water into an underground channel and thereby flood his neighbor's land.

The statute of limitations is not a bar to this claim. The claim cannot be maintained upon the theory of a permanent appropriation by the state for canal purposes of the land flooded. The cause of action is continuing, and arises from time to time as injury is inflicted upon the claimant's property by fresh percolations and floods, and will continue until the cause thereof ceases to exist. (*Baldwin* v. *Calkins*, 10 Wend. 169.)

The evidence in this case tends to show that the claimant has at times been altogether deprived of the use and enjoyment of some of his land, and that other portions have been more or less injured by the flooding thereof; but it also shows that such injuries have been less frequent of late years than formerly. It is quite probable that in the course of time they may altogether cease; but while they continue the claimant is entitled to recover such damages as he can show he has suffered within the period of statutory limitation. Some of the evidence as to damages seems to have been predicated upon the theory of a right to recover as for a permanent injury to the land flowed; but we think this is not the proper rule of damage, and that the claimant must recover for the injuries suffered from time to time as they occur. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.)

The evidence as to the amount of damage sustained by the claimant was somewhat vague and uncertain, but we think there was sufficient from which an approximate estimate could have been made. There was evidence of the extent of the land flooded, the quantity that had been

rendered valueless by the flooding, and of the value of the land; and we think that from these sources of information the Board of Claims could have estimated the damages inflected. At all events, the claimant showed some damage, and was entitled to an award of something, however small the amount might have been.

We think that, for the reasons stated, the award of the Board of Claims should be reversed and a rehearing ordered.

All concur.

Award reversed.