# HOWELL v. BIG HORN BASIN COLONIZATION COMPANY.

IRRIGATION — IRRIGATING DITCHES — RESERVOIRS — LIABILITY FOR INJURIES FROM DITCHES AND RESERVOIRS BY OVERFLOW AND SEEPAGE—NEGLIGENCE—WAIVER—EVIDENCE.

1. Where the irrigating ditch of defendant was constructed along the side of a hill a short distance above plaintiff's premises, and upon slightly higher ground, partly by cutting through sand banks and partly by scraping sand and gravel down the side of the hill to form the bottom and lower bank, and water came upon plaintiff's premises below the ditch by seepage; *Held,* that the evidence showing such facts would justify a finding that the ditch was the source of the seepage, rather than a reservoir of defendant connected with its ditch situated further from the surface evidence of the seepage

2. Where, in constructing an irrigating ditch, an embankment 20 feet high and 360 feet long was built across a dry gulch intersected by the line of the ditch, so that the water flowed into the gulch, with no other regular outlet than the continuation of the ditch from the other side of the gulch, thus causing a body of water to be collected and retained in the basin so formed 12 or 15 feet deep at the dam and backing up the gulch about 2,000 feet; *Held*, that the same constituted a reservoir within the meaning of the statute (Rev. Stat. of 1899, Sec. 974), declaring the liability of reservoir owners for damages arising from leakage, or overflow, or by floods occasioned by the breaking of the embankments.

3. Though a ruling of the trial court that such body of water was not a reservoir within the meaning of the statute aforesaid was error, it was not prejudicial in this suit for damages to plaintiff's land caused by overflow and seepage from defendant's ditch and reservoir, since it appeared that the only material injury chargeable to the reservoir was the flooding of a part of plaintiff's land by water escaping in considerable quantities through spills or waste-gates constructed in the ditch at either end of the embankment, and which plaintiff had consented might be allowed to escape and flow upon his land.

4. Whether such body of water constituted a reservoir or not within the meaning of the statute defining the liability of reservoir owners for certain injuries, the defendant had no right, without plaintiff's consent, to wilfully and knowingly discharge the water from its reservoir upon plaintiff's land through or over spills or waste-gates built in its ditch at either end of the reservoir embankment; and, for injury to plaintiff's land thereby caused, the defendant would be liable, in the absence of sufficient exonerating facts.

5. The defendant having offered to construct drainage ditches, if permitted to do so, to divert the water coming from the waste-gates of its reservoir away from plaintiff's land, but the latter, instead of acquiescing in such offer, having directed and authorized the defendant to allow said water to flow upon his land, his directions and conduct amounted to a waiver of his right to recover for the damage alleged to have been caused by such flowage.

6. Plaintiff having consented and directed that the water be allowed to go upon his land, it was incumbent on him,

when injury subsequently became manifest, to call the defendant's attention to it and withdraw his consent.

7. Plaintiff may not have anticipated the resulting injury when he directed the defendant to allow the water to escape and flow upon his land, but the latter, being free from fraud, misrepresentation or malice, cannot be held answerable for plaintiff's failure to foresee the detrimental result of his consent.

8. The statutes (Rev. Stat. of 1899, Secs. 901, 3069) requiring care in the construction and maintenance of the embankments of an irrigating ditch contemplate the exercise of that degree of care which a prudent man, with due regard for the rights of others and the risk of his undertaking, would exercise in conveying through an artificial channel a substance such as water, that possesses detrimental and destructive as well as beneficial and productive qualities, unless properly restrained; and that is also the rule in the absence of statute.

9. The failure of the statute to specifically require the observance of care in constructing and guarding the bottom of a ditch is not to be regarded as an exemption from liability should damage be caused through negligence in that respect.

10. The owner of an irrigating ditch is bound to exercise reasonable care and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining or operating the ditch. But as the construction and operation of an irrigating ditch by either a person or corporation who has taken the necessary steps to acquire an appropriation of water is a lawful enterprise, a party who has the lawful right to construct and maintain his ditch and convey water through the same to the place of use is not accountable as an insurer, nor for injuries not attributable to some fault or negligence on his part.

11. A ditch owner is negligent, and upon that ground, liable for damages to the premises of another caused by seepage from that part of his ditch constructed along a side hill by cutting in places through sand banks, and in others by forming the bottom and lower bank by scraping sand and gravel down from the hill—thus bringing the bottom several feet above the natural level of the ground, and, with knowledge

of seepage therefrom, failing to take reasonable precautions to prevent the natural seepage of the water through such soil.

12. One who constructs an irrigating ditch through soil naturally incapable of holding water should make all proper and reasonable efforts to prevent seepage therefrom, in order to escape liability on the ground of negligence for damages caused by seepage from such ditch.

13. Testimony of the constructing engineer of the ditch owner that the ditch was properly constructed is not sufficient to sustain a finding of want of negligence in the face of the fact that water constantly seeped from the ditch to the knowledge of the ditch owner, as a result of its construction through unusually loose and porous soil, without proper effort to prevent it.

14. In an action for damages caused to plaintiff's premises by the overflow and seepage of water from defendant's irrigating ditch and reservoir, it was not error to admit testimony brought out on· cross-examination of plaintiff's witnesses and upon the examination of defendant's witnesses to the effect that much, if not all, of the alleged injury could be overcome by proper drainage; the evidence was admissible for the purpose of showing that the land had not suffered permanent injury.

15. Evidence was properly admitted to the effect that plaintiff had not notified the defendant that he had a claim against it for damages, since it was pertinent upon the disputed question of consent to the flooding of plaintiff's land, and also had a bearing on the question of plaintiff's good faith in connection with proof that when approached on the subject of compromise he claimed to have placed his claim in the hands of another who appeared as one of his chief witnesses.

[Decided August 1, 1905.]                      (81 Pac., 785.)

Error to the District Court, Sheridan County, Hon. Joseph L. Stotts, Judge.

Action for damages to land caused by alleged overflow, leakage and seepage of water from an irrigating ditch and reservoir constructed and maintained by the defendant. From a judgment in favor of defendant, the plaintiff brought error.

*E. E. Enterline,* for plaintiff in error.

It was not incumbent upon the plaintiff in error to construct drainage ditches to carry the water away from his land which was coming upon it from defendant's ditch system, nor could it be successfully urged that the defendant would have the right to go upon plaintiff's land and construct drainage ditches thereon without the consent of the plaintiff. (Sylvester v. Jerome, 19 Colo., 128; McCarty v. Canal Co. (Idaho), 10 Pac., 595; Yik Hon v. Spring Valley W. W., 65 Cal., 619; Burrows v. R. R. Co., 30 Am. Dec., 38; R. R. Co. v. Hendrickson, 21 Am. Rep., 97; Ferro v. R. R. Co., 22 N. Y., 209; Cook v. Champlain Transp. Co., 1 Denio, 91; Kellogg v. Ry. Co., 7 Am. Rep., 69.) Hence the objection by plaintiff to the testimony produced by defendant to show that the lands of plaintiff can be drained and used for agricultural purposes should have been sustained, notwithstanding that such evidence was introduced for the purpose of showing that plaintiff's lands had not been permanently damaged, and had not been affected in value by the water running upon the same. The officers of the defendant company had notice and knowledge of the condition of plaintiff's land from the time of the construction of the ditch. It cannot be successfully contended that the injury is not permanent since the land is covered by water and damaged by alkali and mud.

It was error for the court to permit the introduction of evidence that the ditch was constructed under the Carey act, and that the State Engineer accepted the ditch. The court ruled that the evidence was admitted for relieving the defendant from exemplary damages. The testimony was inadmissible for any purpose. The testimony that the engineer accepted the ditch was objectionable as hearsay. The overwhelming testimony in the case proves that water seeps through the reservoir during the entire year, and flows upon plaintiff's land. Therefore, the finding that sufficient quantity of water did not remain in the reservoir the whole year to cause damage is not sustained by the

evidence, but is disputed by the great preponderance of the evidence and is sufficient to reverse the judgment. (Edwards v. Murray, 5 Wyo., 553; Jackson v. Mull, 6 Wyo., 55.) The case was partly determined on deposition introduced by both parties. All those witnesses testified to the condition of the land and the drainage of the ditch, and some of such testimony was upon the value of the land. There was but little conflict between these witnesses, and it clearly appears from the depositions that the lands of the plaintiff were very much damaged and permanently injured. The rule, therefore, against disturbing the judgment in the case of conflicting evidence should not apply, since one of the main reasons for the adoption of that rule is not applicable, viz: that the trial court saw and heard the various witnesses and could judge of their credibility better than an appellate court. ·(Roby v. Roby (Idaho), 77 Pac., 213.) The findings of the trial court show actual permanent injury, although it is stated therein that the injury is not permanent. The damages which it was found that plaintiff sustained are undoubtedly too small as based upon the great preponderance of the evidence.

The true measure of damages for injuries to land is generally the difference between its value before and after the injury. (Manf. Co. v. Brown, 108 Ala., 508; Rourke v. Cen. Mass. Elec. Co., 177 Mass., 46 (58 N. E., 470); Ry. Co. v. O'Mahoney, 60 S. W., 902; Willits v. Ry. Co., 88 Ia., 302; Drake v. Ry. Co., 63 Ia., 302; Norman v. Ince, 8 Okla., 412; Sullens v. Ry. Co., 74 Ia., 659.) In estimating damages for an overflow of land caused by negligent discharge of surface water thereon, recovery may be had for deposits of earth, clay and like substances naturally resulting from such overflow. (Hunt v. Ry. Co., 86 Ia., 15; Ready v. Ry. Co., 72 S. W., 142.) In this case the plaintiff is entitled to recover damages which may have accrued subsequent to the commencement of the action, as they are the natural result of acts complained of, and do not constitute a new cause of action. (Gould on Waters, Sec. 411; Good-

rich v. Marble Co. (Vt.), 13 Atl., 636; Cosgriff v. Miller, 10 Wyo., 190.) Notice to defendant under the circumstances of this case was not necessary to fix liability. (Drake v. R. R. Co., 63 Ia., 302.)

There is some testimony in reference to consent by plaintiff that the water that came through the spills might go upon the land, but none whatever as to the water which leaked and seeped from the ditch or reservoir; but we contend that the evidence is entirely insufficient to show that the plaintiff consented at any time that the defendant might flood or damage his land. Even if consent had been given that the water might run from the spills upon the plaintiff's land, it cannot be construed as authority for the discharge of large quantities on the land to its injury. (Boynton v. Longley, 19 Nev., 69.) Further, it would seem that the defendant at the time of the plaintiff's alleged consent did not intend to discharge a great quantity of water upon the land of plaintiff, and was not contemplating any right to do so.

The conclusions of law are not warranted by the facts found. The storing of water by the defendant in the dry gulch as a part of its ditch system and of the operation of its ditch constituted a reservoir; and the conclusion of the trial court that it was not a reservoir must be held to be erroneous. Under the statute the defendant is liable for all damages from leakage or overflow of waters in the reservoir caused by floods or breaking of the embankments. (Rev. Stat. 1899, Sec. 974; Ditch Co. v. Zimmerman, 4 Colo. App., 78.) And a person constructing a reservoir by which water is collected, and which may escape by overflow or percolation on the premises of another, is liable for damages caused thereby, though there was no negligence in building or maintaining it. (Ry. Co. v. O'Mahoney, 50 S. W., 1049 (60 S. W., 902); Ditch Co. v. Zimmerman, *supra.*)

The owner of an irrigating ditch is liable for damage caused by seepage of water through it, and damages can be recovered even though there was no negligence in the

construction of the ditch.   In this case negligence was
proven, however, and under all the authorities the defendant
should respond in damages.   (Arave v. Idaho Canal Co.
(Idaho), 46 Pac., 1024; Ry. Co. v. O'Mahoney, 60 S. W.,
902; Ry. Co. v. O'Mahoney, 50 S. W., 1049; Big Goose
& C. Ditch Co. v. Morrow, 8 Wyo., 537; Clear Creek
Land & Ditch Co. v. Kilkenny, 5 Wyo., 38; Boynton v.
Longley, 19 Nev., 69; Parker v. Larsen, 86 Cal., 236;
Drake v. R. R. Co., 63 Ia., 302; Shields v. Orr Extension
Ditch Co., 23 Nev., 349.)   The plaintiff was endeavoring to
recover exemplary in addition to actual damages, as the tort
was committed deliberately, recklessly and with the knowl-
edge that the plaintiff's rights were being invaded injuri-
ously.   (Cosgriff v. Miller, 10 Wyo., 190.)

*E. E. Lonabaugh* and *D. C. Wenzell,* for defendant in
error.

Upon a careful examination of the evidence and the au-
thorities bearing on the questions at issue, we feel justified
in contending that the findings of the District Court are
abundantly sustained both by the evidence and the law.   It
will appear from the evidence that a license was granted to
the defendant by the plaintiff to allow the water escaping
from defendant's ditch system to flow over and on the land
of the plaintiff, which license had not been revoked.   It also
appears that at various times after the construction of the
ditch the plaintiff informed the officers of the defendant
company, upon inquiry, that he did not want the escaping
water taken care of, because it would be a benefit to his land.
That part of plaintiff's land which was made swampy by
reason of flooding and percolation was of little or no value
before that, and could be made good agricultural land by
proper drainage.   It is elementary that, where a license has
been granted, an action cannot be maintained for damages
arising from acts happening under the license until it is re-
voked.   (Woodard v. Seeley, 50 Am. Dec., 445; Johnson v.
Lewis, 33 id., 405; Burkham v. Ry. Co., 23 N. E., 799;

Wilson v. R. R. Co., 42 N. W., 600; Hathaway v. Yakima W. L. & P. Co., 44 Pac., 896; Crossdale v. Lanigan, 29 N. E., 824.) A careful reading of the testimony will, we believe, show that the entire ditch system of defendant was carefully and properly constructed, and that there was no negligence either in construction or maintenance. The soil through which the ditch was constructed is loose and sandy, and it is an impossibility to so construct a ditch through such soil as to make it water-tight, until after continued use for a few years it may become so through the accumulation of sediment on the bottom. And the law does not make a ditch owner or ditch company liable for waters percolating or coming through its ditch upon the land of another, except in case of negligence. A ditch company is not answerable for all damages, but is required only to use reasonable skill, judgment and care in the construction and maintenance of its ditch; and with the burden of proof upon the plaintiff in the case there is not sufficient evidence to show negligence on the part of the defendant. (Long on Irr., Secs. 68, 69; King v. Miles City Irr. Co., 41 Pac., 431; Lisonbee v. Monroe Irr. Co., 54 Pac., 1009; Denver v. Mullen, 7 Colo., 345.)

It was the duty of plaintiff, upon finding that he could not take care of the water, to notify the defendant thereof and require it to drain the land. It would appear as though plaintiff had not acted in good faith in the matter. The proposition that it was not the duty of plaintiff to construct drainage ditches is not applicable to the facts in this case.

If the judgment of the lower court should be reversed on the question of liability arising from seepage, a new trial would not be necessary, but in such case the judgment should be for the amount of damages found to have been sustained from that cause in the findings of the trial court. With reference to the fact that depositions were taken of some of the witnesses, and the contention of counsel for plaintiff in error that the ordinary rule in cases of conflicting evidence does not apply, it should be remembered that some twenty or more witnesses were personally before

the court, and that tribunal had an opportunity much better than this court to determine as to the credibility of the testimony. It can hardly be said that, as a general proposition in the arid west, the flooding of a piece of land constitutes a permanent injury. Here the difficulty ordinarily is to get enough water upon the land; and in the case at bar plaintiff's land was of very little value without water. It can be drained of the water which has flowed upon it and be rendered of some value for agricultural purposes.

POTTER, CHIEF JUSTICE.

This is a proceeding in error for the review of a judgment rendered by the District Court sitting in Big Horn County in an action brought by Joseph M. Howell against the Big Horn Basin Colonization Company, a corporation, to recover damages for alleged injuries to a tract of land owned by the plaintiff caused by overflow, leakage and seepage of water from an irrigating ditch and reservoir constructed and maintained by the defendant. The cause was tried to the court without a jury, and upon the findings of fact and conclusions of law, separately stated in writing, judgment was awarded the defendant for costs.

There are two causes of action set out in the petition; the first alleging injury to plaintiff's land from waters that leaked and seeped from a reservoir constructed, operated and maintained by defendant; and the second alleging the negligent construction and maintenance of the defendant's ditch and reservoir, whereby large quantities of water leaked and seeped therefrom, and overflowed the same at certain spills or waste gates, and came out upon and flooded the land of plaintiff, causing a large part thereof to be covered with water, destroying growing crops thereon, and rendering the land useless and unfit for agricultural or other purposes.

The allegations as to negligence, the escape of water from defendant's irrigating works, and the injuries to plaintiff's land, are denied by the answer; and in a second defense it

is alleged that plaintiff refused an offer of defendant to construct drainage ditches through and around his land to carry off any escaping water from defendant's irrigating works, and authorized and directed defendant to permit such escaping water to run into and upon the land of plaintiff, which license, it is averred, had not been revoked or withdrawn otherwise than by bringing this action.

The court found that on different occasions since the construction and operation of defendant's ditch system large quantities of water escaped therefrom at certain spills or waste gates, constructed as hereinafter explained, covering and flooding about sixty acres of plaintiff's land, and washing sand and dirt upon two to three acres thereof, and causing alkali to rise to the surface of a portion of such land; and that said sixty acres had become wet or boggy, and incapable of cultivation while in that condition; and, further, that, by reason of the construction and maintenance of the ditch, water has seeped and percolated through the soil, rising and coming to the surface on about twenty-one acres of the land, not causing a permanent injury, but damaging the plaintiff by reason of such seepage in the sum of $105.

The court also found that none of plaintiff's land had been permanently injured, but could be drained and rendered fit for agricultural purposes; that the land was of little value; that defendant had notice that the water flowed through the spills aforesaid; that plaintiff had given his consent to defendant to permit the water escaping from the ditch, the waste gates or spills, and the ditch system to run over and upon his land, and had not revoked such consent at the time the action was commenced; that there had been no leakage or seepage through the banks of the ditch or alleged reservoir; and that defendant had not been guilty of malice or negligence.

As conclusions of law the court found that the alleged reservoir did not constitute a reservoir within the meaning of Section 974, Revised Statutes of 1899; that the consent of plaintiff aforesaid amounted to a complete defense to the

action; and that defendant was not liable for the injury caused by seepage through the soil, but not escaping through the banks, the same not being the result of negligence on the part of defendant.

It appears from the evidence that plaintiff is the owner of 160 acres of land situated on the northerly side and in the immediate vicinity of Shoshone River, from which stream the defendant in the year 1900 constructed an irrigating ditch or canal, taking the ditch out at a point on such stream somewhere to the west or southwest of plaintiff's land, and running the same in a general northeasterly direction.

The ditch does not cross plaintiff's land, but passes the same within a comparatively short distance from its west and north boundaries. As the ditch approaches a point about 2,500 feet west of plaintiff's land, it intersects the southern bank of what was theretofore a dry gulch, across which, and evidently near its eastern or southeastern extremity, the defendant constructed a dam or embankment about twenty feet in height, into which gulch, above the dam and on the side opposite plaintiff's land, the water carried in the ditch flows, thereby forming a lake or reservoir. The water therein backs up the gulch approximately 2,000 feet, and is probably twelve or fifteen feet deep at the dam. The length of the dam is about 360 feet. The ditch is continued from the other or northerly side of the gulch, whence it proceeds more sharply to the east for some distance, and then about due northeast passing north of and away from the land of plaintiff. At one point this outlet ditch approaches within 300 feet of one corner of the land.

The line of the ditch is along slightly higher ground than plaintiff's premises, and the slope is generally in the direction of those premises. Below the dam there is a natural depression in the ground called a dry-wash which originally constituted a continuation of the gulch, forming with it a natural drainage for the country above. That dry-wash

continues upon plaintiff's land, terminating thereon in a natural slough, which runs northeasterly through the southeastern portion of the land.

For the purpose of allowing the escape of waste water, and to protect the dam aforesaid against floods and freshets, the defendant built in the ditch at or near either end of the dam waste-ways or spills. The water overflowing or flowing through such spills, particularly the spill in the ditch on the northerly side of the gulch, ran into the dry-wash aforesaid and upon the land of plaintiff in such quantities at times that it flooded sixty-three acres thereof, rendering the same swampy, and, in one or more places, the water remained on the land, forming a pond.

It appears that the dam was constructed with soil scraped from the gulch above, but subsequently that was supplemented with brush and timber, backed up with dirt. The dam was originally about one hundred feet wide at its base, which was later increased forty or fifty feet. The evidence discloses that the exposed soil in the gulch was composed of sand and gravel; but there is no evidence as to the depth of such soil or the character of the bottom of the gulch as it was finally prepared to receive the water.

The dam is apparently on a line with the lower bank of the canal on either side of the gulch, or connects therewith, so that the water is conveyed into the gulch and taken out immediately above the dam. It is evident, however, that the bottom of the gulch in the vicinity of the dam is several feet below the bottom of the ditch on either side, and hence a large body of water has been accumulated and retained therein.

It is clear from the evidence that the greater quantity of the water that flowed upon plaintiff's land and flooded it came over or through the spills, and principally, if not altogether, from the spill on the northerly side of gulch. We think the evidence discloses that until a few months prior to the trial, which occurred in December, 1903, a small quantity of water occasionally, if not continually, leaked through the

embankment that was constructed across the gulch, which would naturally flow down the dry wash and into the slough on plaintiff's land, if sufficient in quantity. That leakage seems to have been entirely stopped at least three months previous to the trial; but none of the witnesses seem to have attached much, if any, importance to it as a factor in the injury complained of. The inference is strong that had no other water escaped from the ditch or reservoir, the small amount that trickled through the dam would not have occasioned actual injury. The probabilities are that it might have proven beneficial to plaintiff. However that may be, there is no evidence that such leakage contributed in any appreciable degree to the alleged injury. We think that the only reasonable conclusion to be drawn from the evidence is that the flooding was caused by the water that flowed through or over the spills or waste gates. Indeed, that seems to have been the understanding of the witnesses on both sides.

There is a decided conflict in the evidence as to the exact source of the seepage. It is not denied that water rose to the surface in one or more places on plaintiff's land from beneath, showing clearly the presence of water in the soil from seepage or percolation. Nor is it denied that such water came from the ditch of defendant. But the plaintiff's witnesses were of the opinion that both the reservoir and the outlet ditch situated north of the land in question were responsible for the seepage; while, in the opinion of the witnesses who testified in behalf of defendant, it all came from the ditch, and none of it from the reservoir. Such a matter is perhaps incapable of absolute proof. But we believe that the opinion expressed by the defendant's witnesses is the more reasonable one in view of the facts. The location of the surface evidence of the seepage, in the first place, favors that opinion, which is greatly strengthened by the manner in which the ditch in that locality was constructed.

The line of that ditch appears to be along a side hill to the northeast of plaintiff's land, and it was constructed partly

by cutting through sand banks, and partly for some distance by scraping sand and gravel down the side of the hill to form the bottom and lower bank. Where the latter method of construction was adopted the bottom of the ditch to the depth of five or six feet was composed entirely of sand and gravel so brought down and deposited upon a natural rock base to bring the ditch bottom up to the required level. The tendency of water flowing through a canal so constructed to percolate through the loose soil, and the proximity thereto of plaintiff's land where the evidence of seepage occurred, together with the natural slope of the ground, furnishes a substantial basis for the opinion that the source of such seepage was the ditch rather than the reservoir. The opinion that the water in the reservoir contributed to the seepage was based largely upon the fact that in the winter season when water is not flowing in the ditch ice forms upon the land, thus showing the continual presence of water coming up through the soil. Witnesses for the defendant, however, testified that even after water had ceased to flow in the ditch, seepage therefrom would continue to appear on the surface of the land below, owing to the complete saturation of the soil from water flowing in the ditch during the several months of the irrigating season.

The evidence would, we think, amply justify a finding that the ditch aforesaid was the source of the seepage, and the court probably intended so to find, although the findings are perhaps not definite on that point. But the defendant maintained, and its own witnesses testified that it came from the ditch, owing to the manner of its construction. For that reason and in view of the principles upon which this case must be decided, it will be unnecessary to determine whether any of the injury caused by seepage was or was not the result of percolation from the reservoir. The trial court held that the accumulation of water in the gulch by the means above explained did not constitute a reservoir within the meaning of Section 974, Revised Statutes of 1899, which declares that "the owners of reservoirs shall be liable for all damages

arising from leakage or overflow of the water therefrom, or by floods caused by breaking of the embankments of such reservoir." It will be unnecessary in this case, for reasons that will become apparent, to determine the precise degree of liability imposed by that statute. But whatever the extent of such liability, we are clearly of the opinion that the use of the gulch in the manner stated constituted a reservoir within the contemplation of the statute. The learned District Court evidently considered the gulch as a part of the ditch, and the building of the embankment across it as a convenient contrivance merely for the conveying of the water to the place of ultimate use. No doubt the company may have adopted the plan pursued with the view largely or chiefly of transferring the water to the other side of the gulch, and as a more feasible method than building a flume or running the ditch on grade around the sides of the gulch. Nevertheless, the fact remains that the plan put in operation resulted in the creation of a somewhat extensive basin, wherein a large body of water was artificially collected and retained. The witnesses generally referred to the water thus enclosed as a lake or reservoir. Water remains therein the entire year. Not only is the retention of water in such basin a necessary consequence of the operation of defendant's irrigating works, but that result was evidently intended. The outlet ditch is provided with a headgate supposedly for the purpose of shutting out the water from that ditch, and thus when desired prevent its flowing out of the gulch; and Mr. Welch, the company's secretary, testified that after the close of the irrigating season of 1903 the outlet ditch was closed and the reservoir filled up for winter use.

As ordinarily defined, a reservoir is a place where water collects naturally or is stored for use when wanted, as to supply a fountain, a canal, or a city, or for any other purpose. (Cent. Dict.) Further argument seems unnecessary to show that this body of water maintained by the defendant constitutes a reservoir, not only according to accepted definitions, and the general understanding, but within the mean-

ing of the statute. A contrary view would, it seems to us, violate the terms and object of that statute.

The error of the trial court in that regard, however, cannot be held to have operated prejudicially to the plaintiff. As above suggested, the cause of the greatest injury was the escape of water through the spills. There could exist no doubt of defendant's liability to respond in damages for the injury so caused, in the absence of sufficient exonerating facts, whatever may be the responsibility of reservoir or ditch owners under the statute or at common law. Clearly the defendant had no right to wilfully or knowingly discharge the water from its reservoir in that manner upon plaintiff's land, unless as it alleges the plaintiff had consented thereto. Although the spills were confessedly constructed to carry off waste water and to guard against injury to the dam, reservoir and ditch from freshets and floods, it appears that more or less water frequently, if not habitually, poured out through cracks or openings in the spills, and at times large quantities, sufficient, as some witnesses testify, to irrigate four or five places of the size of plaintiff's tract. Some effort appears to have been made from time to time to avoid or lessen such flow of water by more perfectly closing the cracks in the spills, but such efforts do not seem to have entirely prevented the escape of water therefrom. Our understanding of the testimony is that the flooding of plaintiff's land from that source was not so much the result of a large amount of water flowing down on any single occasion, but rather a frequent or continual flow that eventually saturated the land far beyond its power of absorption, thus rendering it swampy and in an unfit condition for cultivation or even grazing purposes; though there is considerable evidence to the effect that it was capable of drainage at comparatively small expense and of being thereby brought into good condition.

The only defense asserted in avoidance of liability for the damage thus occurring is that the plaintiff consented that defendant might permit the water so to flow through the

spills and upon his land.   Upon that question the evidence is conflicting, with the preponderance clearly favoring the defendant's claim.   Three witnesses, including the manager of defendant company, testified that the plaintiff had, with knowledge of the manner in which the water was so escaping, verbally directed the officers and employes of the company to make no provision for diverting it from his land, but to allow the same to flow thereon.   The manager testified that he proposed to plaintiff that the company would divert such water from his land by digging drainage ditches, but the plaintiff told him to let the water run and he would take care of it.   This is contradicted by the testimony of a son of the manager.   At a later period, according to the testimony of another employe of the company, who had observed the escape of the water from the spills, he was directed by plaintiff to allow the same to flow down and upon his land, who stated that he could use it.   There is no evidence of a subsequent withdrawal of such consent or direction, or of any notification by plaintiff to defendant to keep the water from his land.

On the contrary, the defendant testified that he acceded to the suggestion for digging drainage ditches, and indicated to the manager of defendant where such ditches could be made.   It is admitted that there was some conversation between such manager and the plaintiff with reference to a proper location for a drainage ditch, but the former testified that it had reference only to a ditch which the company constructed to prevent water flowing upon the adjoining land of the plaintiff's brother.   The plaintiff also denied having the later alleged conversation with the other employe.   The foregoing brief statement of the substance only of the evidence on this subject is sufficient, we think, to show the conflict in the testimony, and that the trial court was justified in finding that the plaintiff had consented as alleged, so far as the water is concerned which escaped at the spills. We find no justification for finding that the consent applied to water otherwise escaping from defendant's irrigating works.

It is perhaps reasonable to assume that when the plaintiff gave his consent and directions as alleged, and thereby induced the company to refrain from taking the necessary and proposed precautions to prevent the escaping water from going upon his land, there was no anticipation on his part of the injurious consequences which followed. But the company cannot be held answerable for plaintiff's failure to foresee the detrimental result of his consent, it being free from fraud, misrepresentation or malice. The proposal of the manager of defendant to divert the water from plaintiff's land does not appear to have been the result of complaint by the latter, but on the contrary to have proceeded from a desire on the part of such official to prevent possible injury to the plaintiff.

The defendant having offered to construct drainage ditches, if permitted to do so, to divert the water coming from the spills away from plaintiff's land, but the latter, instead of acquiescing in such offer, having directed and authorized the defendant to allow the water to flow upon his land, his directions and conduct in that respect amounted to a waiver of his right to recover for the damage alleged to have been caused by such flowage. (Griffin v. Lawrence, 135 Mass., 365.) Having consented and directed that the water be allowed to go upon his premises, it was his duty when injury subsequently became manifest to call the defendant's attention to the matter, and withdraw his consent. No doubt had he done so in apt time much, if not all, the damage so occurring might have been averted. It is fair at least to assume that defendant would have done its duty in that regard. The refusal of the trial court, therefore, to award damages against defendant for the injury to plaintiff's land caused by the flowing of water over and upon the same from the spills and reservoir, must be sustained.

This brings us to the question of seepage. The findings of fact upon that subject are as follows: "That, by reason of the construction and maintenance of said ditch by de-

fendant company, water has seeped, percolated and escaped through the soil, rising and coming to the surface on plaintiff's said land, over about twenty-one acres thereof, and that plaintiff's said land has not been permanently injured thereby; that plaintiff suffered damages thereby in the sum of $105.

"That the said ditch and the embankments thereof, including the embankment across said gulch and the waste gates, thereto, were properly constructed by said defendant, and that there is no leakage or seepage through the banks thereof; that said defendant was and is not guilty of any malice or negligence in the construction, operation or maintenance thereof."

Upon the facts so found the court stated the following conclusion of law: "That for any seepage from said ditch system, not escaping through the banks of said ditch and embankment, but percolating through the soil and arising to the surface at a distance from said ditch, the same not being the result of any negligence of defendant company, and it being impossible in any manner to guard against the same, the defendant company is not liable."

The number of acres found to have been injured through seepage appears to be a fair and reasonable deduction from the evidence, and the same, we think, is true respecting the finding as to the amount of damage from that cause. There is considerable conflict in the evidence regarding damages, such conflict covering the value of the land before and after the injuries complained of, the amount of the actual damage to the land, and the permanency of the injuries. The witnesses for the respective parties differed widely as to those matters. Those who testified for the defendant were generally of the opinion that, because of the natural wild and sandy condition of the land, it had been permanently benefited by the flooding received, suffering only temporary ill effects capable of being overcome by drainage at very moderate expense. And the court found as a fact that the land had not been damaged in any sum whatever, except in the

sum of $105, as above mentioned, on account of the seepage. In estimating the damage from seepage, the sum of five dollars per acre was evidently allowed, which we think sufficiently large under the evidence to prevent its being disturbed on this appeal.

While maintaining that the proof shows negligence on the part of defendant, counsel for plaintiff in error contends that the trial court erroneously held that negligence was a necessary element of liability. The rule of absolute liability is insisted on in case of injuries caused by either reservoirs or ditches. In Colorado, where they have a statute as in this state declaring the owners of reservoirs liable for all damages from leakage or overflow, or by floods caused by breaking of the embankments, the Court of Appeals, without deciding whether or not the statute is absolute, and imposes responsibility regardless of conditions or circumstances, held it sufficiently absolute to relieve the plaintiff from alleging and proving negligence, and to cast upon defendant the burden of showing exonerating facts, if any, the damage and cause having been established. (Larimer County D. Co. v. Zimmerman, 34 Pac., 1111.) We are, however, relieved in this case from determining the extent of liability in relation to reservoirs, for the reason that the injurious seepage was shown to come from the ditch and not the reservoir by the preponderance of the evidence, as we think, as well as for another reason about to be explained.

We have no statute defining the responsibility of ditch owners for injuries caused by escaping water. It is provided that they shall carefully maintain the embankments of the ditches, so that the waters thereof may not flood or damage the premises of others. (R. S. 1899, Sec. 901.) And a ditch company is expressly required to keep the banks of its ditch in good repair, so that the water shall not be allowed to escape, to the injury of any mining claim, road, ditch, or other property located and held prior to the location of the ditch. (Id., Sec. 3069.) There is also a

provision authorizing the State Engineer to inspect, during construction, any ditch, canal or other work carrying more than fifty cubic feet of. water per second of time, and to order such alterations or additions deemed necessary for the security of the work or the safety of persons residing on or owning land in the vicinity of such works. (Id., Sec. 932.) And such inspection may be requested upon certain conditions by any such resident or land owner. (Sec. 933.)

By these provisions the Legislature has shown a scrupulous desire to protect against unreasonable injury from water conveyed through ditches, but they clearly fall short of imposing upon a ditch owner the burden of an insurer. The statutes require the exercise of care in the construction and maintenance of the embankments of a ditch, and contemplate the exercise of that degree of care which a prudent man, with due regard for the rights of others, and the risk of his undertaking, would exercise in conveying through an artificial channel a substance such as water, that possesses detrimental and destructive as well as beneficial and productive qualities, unless properly restrained. But that is clearly the rule without statutory aid. The failure to specifically require the observance of care in constructing and guarding the bottom of a ditch cannot be regarded as an exemption from liability should damage be caused through negligence in that respect.

The construction and operation of an irrigating ditch, either by an individual or corporation, who has taken the necessary steps to acquire an appropriation of water, is a lawful enterprise; and, so far as the evidence discloses, the defendant had a lawful right to construct and maintain its ditch over the line traveled by it, and to convey water through the same to the place of use. This case, therefore, is unlike that of Clear Creek Land & Ditch Co. v. Kilkenny, 5 Wyo., 38, where liability for damage from seepage was upheld on the ground that the ditch was constructed across the land of the plaintiff, without authority, no right of way therefor having been obtained.

The well settled rule is that the owner of an irrigating ditch is bound to exercise reasonable care and skill to prevent injury to other persons from such ditch, and he will be liable for all damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining or operating the ditch. (Long on Irr., Sec. 68; Farnham on Waters & Water Rights, Sec. 634; 17 Ency. L., 512; Lisonbee v. Monroe Irr. Co., 18 Utah, 343 (54 Pac., 1009); King v. Miles City Irr. D. Co., 16 Mont., 463 (41 Pac., 431); Jenkins v. Cooper Irr. Co. (Utah), 44 Pac., 829; Shields v. Orr Extension Ditch Co., 23 Nev., 349 (47 Pac., 194); Kearney Canal & Water Supply Co. v. Akeyson, 45 Neb., 635; Chidester v. Consolidated Ditch Co., 59 Cal., 197; McCarty v. Boise City Canal Co. (Idaho), 10 Pac., 623; Turpen v. Turlock Irr. Dist., 141 Cal., 1 (74 Pac., 295); Stuart v. Noble Ditch Co. (Idaho), 76 Pac., 255; Emison v. Owyhee Ditch Co., 37 Ore., 577 (62 Pac., 13.)

The principle is stated in Gould on Waters as follows: "A person may lawfully collect water by means of a dam, or in ditches, canals, culverts or pipes, and is not liable in such a case for injuries caused by the escape of the water, in the absence of negligence on his part. * * * If the injury is caused by hazardous experiments, by the imperfect construction of a dam or canal embankment or negligence in maintaining it, or in opening flood-gates, the owner is liable." (Gould on Waters, Sec. 298.) "The measure of the care which the ditch owner is bound to use is that which ordinarily prudent men exercise under like circumstances when the risk is their own. And if he fails to exercise this degree of care, he is liable for the injuries which the water causes to the adjoining property in consequence of his negligence." (Farnham on Waters & Water Rights, supra.)

The construction of ditches is one of the customary and recognized methods of appropriating water and conveying the same for use in irrigation and for other necessary purposes. It is the method more generally, and, indeed, almost universally employed. While those engaged in such an

undertaking, attended with possible risks to others, should be answerable for the conduct thereof with diligence proportioned to the apparent risk, there is no substantial reason, we think, for holding them accountable as insurers, nor for injuries not attributable to some fault or negligence on their part.

Occasional expressions may be found in judicial opinions apparently tending toward a more stringent rule. But examination will disclose in most, if not all, such cases, where statutory provisions have not intervened, that liability was upheld on the theory of negligence. That we understand to be the effect of the case of Shields v. Orr Extension Ditch Co., *supra*, much relied on by counsel for plaintiff in error. The Nevada court there sustained the refusal of certain instructions drawn upon the theory that the defendant might recover if it had not been guilty of negligence. The decision was, however, based on the ground that the uncontradicted testimony showed the existence of negligence, and hence the instructions were held inapplicable and misleading.

The District Court, therefore, properly held that the plaintiff could not recover for the damage from seepage, unless the same was shown to have resulted from the negligence of defendant. We think, however, that the evidence does not support the finding of no negligence.

As already explained, the ditch from the reservoir runs along a side hill above the premises of plaintiff, where, at least in one place, a cut was made through sand banks, and in two or three places a fill was made by scraping sand and gravel down from the side of the hill to form the bottom and lower bank of the ditch, thus bringing the bottom some five or six feet about the natural level of the ground. The seepage complained of most probably came from the parts of the ditch so constructed. The engineer in charge of its construction testified that, in his opinion, the seepage came from the cut through the sand banks, and that was also the opinion of the defendant's manager, on account, as he says, "of the loose condition of the sand banks."

It appears that at the time of construction water was turned in and teams used in an endeavor to tramp the earth solid; but whether the company made any such endeavors after commencing the operation of the ditch, and the appearance of the seepage on plaintiff's land, is not sufficiently disclosed. The defendant's witnesses testified that the seepage was becoming less each year because of the natural washing down and deposit of sediment in the ditch, as a consequence of the flow of water therein during each irrigating season; and, while the evidence shows that the officers and agents of the company knew of the seepage, it fails to show, we think, sufficient, if any, precautions on the part of the defendant to prevent the same.

It is true that the defendant's engineer testified that the canal was properly constructed and on proper grade to carry the water. But that opinion is clearly insufficient to sustain the finding that there was no negligence, in the face of the fact that the water constantly seeped from the ditch to the knowledge of defendant, as a result of its construction through unusually loose and porous soil, without proper effort to prevent it. (Reed v. State, 108 N. Y., 407.)

We need not decide whether a ditch owner would be liable for temporary seepage that might be the usual and necessary incident of a new ditch constructed by excavation in the generally prevailing soil of the country, and in the usual manner. The question in that case even would depend upon the existence or non-existence of negligence. It appears that the ditch south of the reservoir was excavated in the earth and did not seep; and there is sufficient evidence to show that the places in the ditch in question where the seepage occurred were constructed through or with such unusually loose and porous soil as to require at least active endeavor on the part of the defendant to render it reasonably capable of holding water. The great benefit to be derived from such enterprises as that of the defendant does not authorize the promulgation of a principle that will permit one tract of land to be reclaimed at the expense of the destruction of another without compensation.

If the company saw fit to .construct its ditch through soil naturally incapable of holding water, it should at least have made all proper and reasonable efforts to prevent seepage therefrom. Failing to do so, it was clearly negligent. (Reed v. State, 108 N. Y., 407; Scott v. Longwell (Mich.), 102 N. W., 230; Shields v. Orr Ex. Ditch Co., 23 Nev., 349 (47 Pac., 194); Turpen v. Turlock Irr. Dist., 141 Cal., 1 (74 Pac., 295.)

In Reed v. State, *supra,* the New York Court of Appeals said: "The attempt to collect a large body of water into a limited space surrounded with a porous and gravelly soil, without taking adequate precaution to confine it to the receptacle prepared for it, was, upon the face of it, an inexcusable act of negligence in those having charge of such work, and cannot be justified under the known laws governing the motion of fluids." In the Michigan case above cited recovery of damages was sought for injury caused by water seeping through the banks of a mill race. The damage occurred after the race had been emptied and cleaned, and water again turned into it. The court said: "In view of the undisputed fact that such a race was likely to leak on account of the scraping and cracks, I think that we could safely say, as a matter of law, that defendants were negligent in not taking proper precautions to prevent the water escaping. At any rate, defendants were bound to use care proportioned to the danger. If the question of defendant's negligence was one for the jury, the material circumstances to be considered by the jury were these: The probability of the escape of the water, and the precautions taken by defendants to prevent such escape."

We do not think the evidence warrants the statement of the court in its conclusion of law on this subject that it was impossible for the defendant to guard against the seepage complained of. The seepage was continuous, not occasional or accidental. There is some testimony to the effect that the line of the ditch pursued the most practicable route, and that the plan of filling in along the depressions or low places was

more advisable than fluming. Beyond that, no attempt is discerned to excuse or justify the defendant on the ground that the seepage, or the injury to plaintiff therefrom, could not have been avoided by the defendant, unless the admitted fact that water would usually seep through such loose soil as composed the bed and banks of the ditch at the points mentioned is to be viewed in that light. But if it be true that the ditch was constructed in such a place and manner, or through such soil that it was impossible to prevent the continuous and large amount of seepage that occurred, or at least to avoid the injurious consequences thereof, then it might be difficult to find any reasonable basis for holding that the defendant had exercised the required diligence, care and skill in constructing its canal.

Over the objection of the plaintiff the court permitted the defendant to show on cross-examination of plaintiff's witnesses, and also by the testimony of its own witnesses, that much if not all of the alleged injury to the land of plaintiff could be overcome by proper drainage. The object of the testimony was evidently to show that the land had not suffered permanent injury. It was clearly admissible for that purpose as bearing upon the question of damages. There is no indication that it was admitted upon the theory that plaintiff had contributed to the injury by his failure to properly drain his premises.

Error is also assigned upon the action of the court in admitting testimony to the effect that the plaintiff had not notified the defendant that he had a claim against it for damages. The evidence was, we think, properly admitted. It was pertinent upon the disputed question of consent to the flowage of water through the spills, and tended to show that such consent had not been withdrawn. It also had a bearing upon the question of plaintiff's good faith in connection with certain other proof, viz: that when he was approached by defendant's manager on the subject of compromise of the pending action, his only response was that the matter was out of his hands, and in the hands of his father, who appeared as one of plaintiff's chief witnesses.

The defendant being liable for the damages causes by the seepage, the plaintiff was entitled to judgment for the amount of that damage as found by the court, viz: $105. It is unnecessary to remand the cause for a new trial, as a proper judgment can be entered upon the facts found and sustained by the evidence. The judgment will be reversed, and vacated, and the cause remanded with directions to the District Court to enter judgment for the plaintiff and against the defendant for the sum of $105 and costs.

BEARD, J., concurs.

VAN ORSDEL, J., did not sit.