WILLIAM HEARD vs. PROPRIETORS OF THE MIDDLESEX CANAL.

Under the *St.* of 1793, c. 21, incorporating the Proprietors of the Middlesex Canal, which provided that any person who should be damaged by said Proprietors, by their flowing his land, should have compensation therefor by application to a court within one year from the time of the damage done, it was *held* that the damage was done to the land owner, when said Proprietors' permanent dam across Concord River was completed, for the purpose of raising a head of water for the supply of their canal, and that he had no remedy by application to a court after a year from that time had elapsed.

THIS was a petition, presented to the court of common-pleas at the June term 1840, in which the petitioner set forth, that

before and ever since the 1st of May 1834, he had been seized and possessed of four tracts of meadow land in the town of Wayland, and that the Proprietors of the Middlesex Canal, a corporation established by law, had, in the prosecution of their business, ever since said 1st of May, and long before, maintained, kept up and continued a dam in the town of Billerica, across Concord River, and had, by means thereof, flowed said meadow land, whereby the same had been greatly damnified : That the petitioner, on the 1st of May 1840, requested of said proprietors, in writing, that they would make him such satisfaction for so flowing his said land, as he was entitled to re: eive by the provisions of the *St.* of 1793, *c.* 21, incorporating said proprietors, and that he demanded, as a reasonable satisfaction for the damage so sustained, the sum of $ 2000 ; that the twenty days had elapsed, within which, by said act incorporating said proprietors, they should have made or tendered satisfaction for said damages ; yet that they had not made or tendered to the petitioner any reasonable satisfaction therefor : Wherefore he prayed the court to appoint a committee to estimate the damage so done to his land by said proprietors, as provided for in their said act of incorporation.

To this petition, the respondents filed a plea of not guilty, and a specification of the following matters, (among others,) intended to be given in evidence by them ; viz. that they had a right, during the time mentioned in said petition, to maintain and keep up the dam therein mentioned, in the manner and to the height in and to which they did maintain and keep up the same ; that they had so maintained and kept it up for more than 20 years next before the filing of said petition ; and that they had done nothing tending to obstruct the water of said Concord River, or to cause the same to set back on the petitioner's said land, at any time within one year next before the commencement of this suit.

At the June term, 1842, of the court of common pleas, the foregoing petition and the said plea and specification came on to be heard before *Strong*, J. and the respondents thereupon moved the court that said petition be dismissed with costs ;

whereupon the petitioner offered to prove the several allegations and statements in his petition, and especially that his said meadow land had been, during all the time stated in said petition, flowed and greatly injured by the waters of said river, and that said flowing and injury were caused by the said dam of the respondents. But the judge declined hearing the evidence, and did, without hearing it, order that said petition be dismissed with costs ; and the petitioner alleged exceptions to said order

*B. Rand & Dexter*, for the petitioner.

*S. Hoar & B. R. Curtis*, for the respondents.

SHAW, C. J. The right of the petitioner to damages must depend upon the construction of the act incorporating the Proprietors of the Middlesex Canal, and the several acts in addition thereto.

It is an established and highly salutary rule of law, that where the legislature authorize the erection of public works, which may involve the necessity of appropriating private property to public use, and provide a special remedy for the assessment and payment of damage for the property so appropriated, and such remedy is a constitutional one, the party, whose property is thus applied, can have no other remedy for his indemnity. This rule has already been applied to claims for damage, under this same act of incorporation. *Stevens* v. *Proprietors of Middlesex Canal*, 12 Mass. 466.

By the terms of the act, the remedy was to be obtained by petition to the court of sessions. That court was long since discontinued, and its jurisdiction transferred. It has not been denied, in the present case, that this jurisdiction has been transmitted, through various intermediate statutes, to the court of common pleas, and is now vested in that court. We have not examined these statutes with this view, but proceed on the assumption that the court of common pleas has this jurisdiction, and that the petition was rightly brought there.

The respondents, in their specification of defence, allege and offer to prove that the dam in question, of which the petitioner complains, was not erected, and has not been raised in height, within 20 years. This fact does not appear in proof, no ev

dence of the facts having been taken in the court below. But the motion to dismiss the petition, for want of any sufficient averment to support it, was this ; that it is not alleged in the petition, that the dam has been erected, or its height increased, within one year next before the complaint made and the petition filed ; but on the contrary it does aver, that the respondents have kept and maintained their dam for six years next before demand of damage made, and for a long time previously thereto, and does not allege that the dam has ever been raised since it was first erected. The precise question, therefore, for the consideration of the court, and which has been argued by counsel, is, whether the person, whose lands are alleged to have been damnified by flowing, can have this remedy, at any time after the dam has been erected and completed, and the lapse of one year from that time ; or whether he is barred, by the limitation of one year from the time the dam was erected. Upon this question, the court are of opinion, that the application for damages, and the legal proceedings consequent thereon, must be commenced within one year from the time of the damage done, and that, within the meaning and true construction of this act, the damage is done to the proprietor of adjacent meadows, whose land will be flowed, when the permanent dam is erected, the natural and necessary effect and operation, as well as the obvious and avowed purpose of which are, to raise a head of water, for the permanent supply of a canal. This conclusion, we think, results as well from the terms, as from the manifest objects and policy of the act.

The Middlesex Canal was a public work. And although the benefit to the public was the ultimate object, it was to be obtained, like many other public benefits, such as bridges and turnpikes, through the agency of a joint stock company, who would advance the funds for the enterprise, and be indemnified by a toll fixed by law, subject, after a certain time, to be regulated by the government. That it was regarded by the legislature as a public work of great utility, is manifest from the original act of incorporation, and the various subsequent acts in addition thereto.

It was also a permanent work. It was not limited to any term of years, but, like a highway, it was perpetual; and the uses of a canal would require that the water be kept up during the whole year.

What then is the nature of the damage, which an owner of land may sustain from the erection and maintenance of such a dam? It is a work authorized by law, and by a law which recognizes the right of the legislature to take private property for public use, on paying an adequate compensation therefor, and provides for its exercise; so that it is not unlawful, its erection is not a nuisance, and its maintenance is not the continuance of a nuisance. It is permanent and perpetual in its nature. It is done for the purpose of raising and maintaining water to a certain height, and the damage, which that may do to adjacent land, will be permanent. It not only deprives the owner of the products and profits of the land, but by permanently changing its condition, it deprives it of the capacity for future cultivation and improvement. It therefore deprives the land, in whole or in part, of its actual, present exchangeable value; and such loss or diminution of value is the measure of the owner's damage. It may be that the land has never yielded any profit; it may be swamp or morass; but if capable of being drained, subdued and cultivated, it is of value; and depriving it of that capacity for improvement is a loss to the owner. And these considerations are all to be taken, by those who are called on to assess such damages.

These views, we think, are distinctly and fully recognized in the provision made for the assessment of damages, in the act of incorporation. St. 1793, c. 21. (1 Special Laws, 467.) It recites that " whereas it may be necessary, in the prosecution of the foregoing business, that the property of private persons may, as in the case of highways, be appropriated for the public use; in order that no person may be damaged by the digging and cutting of canals through his land, by removing mills or mill dams, diverting watercourses, or *flowing his land*, by the proprietors aforesaid, without receiving full and adequate compensation therefor: Be it enacted, that in all cases where any

person shall be damaged in his property by the said proprietors, for the purposes aforesaid, in manner as is above expressed, or *in any other way*, and the proprietors aforesaid do not, within 20 days after being requested thereto, make or tender reasonable satisfaction to the acceptance of the person damaged by them as aforesaid, the person so damaged may apply to the court of general sessions of the peace, to have a committee appointed by said court, to estimate the damage so done ; and the said court are hereby authorized and empowered by warrant under the seal thereof, upon such application made, if within one year from the time of the damage done as aforesaid, to appoint a committee of five disinterested freeholders to estimate the damages." It goes on to provide a mode for the estimation and payment of the damages. It is manifest that the legislature consider, not that the land is temporarily affected, or its profits taken away or diminished, but that the property is " *appropriated* for the public use," and so far permanently taken from the owner. It is a perpetual burden and incumbrance. It is likened to land taken for a highway. But when land is taken for a highway, the owner is not devested of the fee, but the public acquire a perpetual easement, which practically operates to take away the whole value of his estate ; and damages are ordinarily estimated accordingly. This very analogy indicates the understanding of the legislature that this flowing of land would cause a perpetual incumbrance, like that of laying a highway over it, and leads to the inference, that they intended it should be compensated for, in the same manner. Further ; this appropriation of the land, by flowing it, is put on the same footing with digging a canal through it, removing mills or mill dams, or diverting watercourses, all of which constitute an immediate diminution of the value of the estate. There is nothing in the act, indicating an intention of the legislature that there was to be more than one assessment of damages ; and if this should not include the entire loss which the owner might sustain, by the diminution of the value of the estate, it would fall short of that " adequate compensation " for which they intended to provide.

But we think the same conclusion follows from considering

the nature of such an enterprise, and the policy and purposes of the act establishing it. Whether a public improvement will be beneficial, depends upon a comparison of the utility with the cost. Compensation for land taken constitutes an essential part of the cost; and if it is to pass over highly improved and very valuable lands, as through a city or thickly settled village, it is a good reason why the enterprise should not be undertaken; but if over lands of little value, it would be otherwise. Now land may be of little value, when the work is determined on and laid out, and if the entire cost is then assessed, it may be a small sum. But if the damage is to be assessed, from time to time, in all future time, after lands have risen in value, from the progress of improvement, the cost of such a work could never be known nor estimated. Such a continuing and growing liability, espe cially when, as in the present case, the liability for damages is made a charge upon every stockholder in the company, would operate as a discouragement, if not an absolute bar to every such undertaking. But if the entire damage for land can be not only estimated and ascertained, but paid, whilst the work is in progress, whilst the original proprietors and managers have the superintendence and conduct of its affairs, the costs of land will be included and liquidated, with the other costs of the work, and the whole made up and included in the capital stock of the company.

The court are therefore of opinion, that the damage, contemplated by the act, is not the remote and consequential damage, which may arise from the future operation of the work, but the immediate and direct damage arising from the erection of such a work. It is erected for public use, sanctioned by law, permanent in its operation on the complainant's property, and perpetual in its duration; it either passes over the complainant's land, or it is so situated as to affect it and impair its value. The damage done, then, is the immediate damage done to the complainant's estate by changing its permanent condition and impairing its present value, and this is done by the erection of the dam; and of course the term of one year, within which the complaint must be made, is to be computed from that time.

On any other supposition, this would be practically no limitation. If one year should be computed from the time of the complainant's receiving damage, by the loss of his grass, this is a danger perpetually recurring, and complaints would be brought from year to year, in all future time. But the construction adopted by the court does, in our opinion, secure the just claims of the land holders, affords protection to the promoters of a useful public enterprise, and is consistent alike with the provisions and the policy of the act of incorporation.

*Exceptions overruled and petition dismissed.*