## ROYAL CALL *vs.* THE COUNTY COMMISSIONERS OF MIDDLESEX.

The provision in § 8 of the act incorporating the Essex Company, and authorizing them to construct a dam across the Merrimack River, (*St.* 1845, *c.* 163,) that "any person who shall be damaged in his property by said corporation, in cutting or making canals through his lands, or by flowing the same, or in any other way in carrying into effect the powers hereby granted, shall have the same remedies as are provided by law, for persons damaged by railroad corporations, in the thirty-ninth chapter of the revised statutes," has reference not only to the form of remedy, but also to the limitation of "three years from the time of taking the land," imposed by Rev. Sts. *c.* 39, § 58. And an application cannot be made to the county commissioners, after the expiration of three years from the completion of the dam, to estimate the damages occasioned by such flowing, even though such damages did not occur, and could not be foreseen, before the expiration of said three years.

PETITION for a mandamus to require the county commissioners to assess damages against the Essex Company for flowing the petitioner's land in Lowell, by erecting a dam across the Merrimack River at Lawrence, pursuant to their act of incorporation, *St.* 1845, *c.* 163.

The commissioners annexed to their answer a record of their proceedings, which set forth that Call presented a petition to them on the 26th of February 1853, upon which notice was ordered and given, and a hearing was had, at which the petitioner offered to prove the injury to his land by the flowing occasioned by the dam of the Essex Company; and their neglect

for thirty days after demand, to make compensation; and that the land described in his petition had never been flowed by said dam until within nine months before the filing of his petition; and that previously to said flowing it was not known, and could not be known, that said dam was an injury to or liable to injure said land; but it being admitted by the parties that the dam was completed in November 1847, the commissioners declined to hear testimony, and decided that the petitioner could not maintain his petition, because it was not filed within three years after the completion of the dam; and for this reason dismissed the petition.

*A. P. Bonney,* for the petitioner. The *St.* of 1845, *c.* 163, having authorized the injury and prescribed the remedy, the petitioner can have no other remedy. *Stowell* v. *Flagg,* 11 Mass. 364. If the statute remedy were limited, as the respondents held, to three years from the completion of the dam, the petitioner could not have availed himself of it, because he had not then suffered any damage, and could not know that he ever would suffer any. Such a construction of the statute is opposed to the manifest intention of the legislature to provide a remedy for every one whose lands are injured, and works great injustice, and leads to absurd consequences, and is therefore not to be sustained. *Staniels* v. *Raymond,* 4 Cush. 316. *Commonwealth* v. *Kimball,* 24 Pick. 370.

The provision of *St.* 1845, *c.* 163, § 8, giving to any persons whose lands are injured by the dam of the Essex Company, " the same remedies as are provided by law, for persons damaged by railroad corporations, in the thirty-ninth chapter of the revised statutes," relates to the form only of the remedy, and does not attach the limitation of three years prescribed by Rev. Sts. *c.* 39, § 58. So important a limitation is not to be inferred, when the legislature have not distinctly expressed it.

If the limitation applies at all, there is no reason why it should begin to operate from the time of the completion of the dam; the act does not so provide; and it was not the erection, but the maintenance, of the dam, which caused the damage to the petitioner. The limitation, if any, does not begin to run

20 *

from the time of the act which causes the injury, but from the time when the injury actually occurs. *Delaware & Raritan Canal* v. *Wright,* 1 Zab. 469. *Hathorne* v. *Stinson,* 3 Fairf. 183. *Roberts* v. *Read,* 16 East, 215. *Gillon* v. *Boddington,* 1 Car. & P. 541. *Stowell* v. *Flagg,* 11 Mass. 364.

And the limitation can, at most, only apply to the taking of, land or property, which is a permanent possession and occupation, such as to deprive the owner of its ordinary use and benefit; and not to an injury like the plaintiff's, which is an unintended, unforeseen and temporary flowing, occurring only at great intervals. Rev. Sts. *c.* 39, §§ 56, 58, 60, 61. *Babcock* v. *Western Railroad,* 9 Met. 553. And a distinction is made between the taking and flowing of land, in *St.* 1845, *c.* 163, § 3, which restricts the Essex Company's right of taking land to twenty feet on each side of their canal and locks.

*E. Merwin,* for the respondents.

SHAW, C. J. We doubt very much whether, if the petitioner were right in matter of law, his remedy would be by mandamus. When a court of special jurisdiction decline acting at all, they may be required by a writ of mandamus to entertain a case within their jurisdiction; to consider it, exercise their jurisdiction, and render some judgment. But in general, this court will not direct them by mandamus what judgment to render, or to reverse a final judgment already entered. That is to be done on an appeal, or some proceeding in the nature of an appeal or writ of error. In a case like this, certiorari would seem to be the proper process to bring the doings of the county commissioners before this court, to determine whether they are erroneous or correct in matters of law. But this point was not argued, and therefore we do not express any opinion upon it.

But the question is, whether the petitioner was too late in making his claim for damages. This depends upon the act giving the remedy, the charter of the Essex Company, § 8 of which provides that " any person who shall be damaged in his property, by said corporation, in cutting or making canals through his lands, or by flowing the same, or in any other way

in carrying into effect the powers hereby granted, unless said corporation shall, within thirty days after request in writing, pay or tender to said person a reasonable satisfaction therefor, shall have the same remedies as are provided by law, for persons damaged by railroad corporations, in the thirty-ninth chapter of the revised statutes." This reference indicates the general course to be pursued for the assessment and recovery of damages, when one party is permitted by public authority to erect a work which may occasion damage to another; though the cases are not strictly analogous, because the building of a railroad does not ordinarily cause damage to the land of others by flowing. The reasonable construction is, that the same course, as far as it is applicable to the subject matter, shall be pursued. Now, in turning to Rev. Sts. c. 39, §§ 56, 57, we find provisions for an application by the party injured to the county commissioners to estimate his damages, and that either party dissatisfied with their estimate may have a jury; and then comes § 58: " No application to the commissioners to estimate damages for land or property hereafter to be taken, shall [except where the lawfulness of location is in dispute] be sustained, unless made within three years from the time of taking the same." Does this limitation apply ?

The petitioner is precisely within the words of the act of incorporation ; he is a person who, as he alleges, would sustain damage in his property, by said corporation, by flowing his lands. He therefore claims to have the remedy given to those whose lands are damaged by railroad corporations, by the works which they are authorized to lay down and construct on the lands of others. The damage done by railroads is seldom, if ever, done by flowing, but ordinarily by taking and appropriating the land. The same remedy then is given against this corporation for damage by flowing, which is given by the Rev. Sts. against railroad corporations for land taken. We think therefore that the limitation of time, within which the remedy is to be sought in the one case, applies to the other.

The term " flowing lands," has acquired a definite and specific meaning in our law. It commonly imports raising and setting

back water on another's land, by a dam placed across a stream
or watercourse which is the natural drain and outlet for surplus
water on such land. This is usually done to enable a party to
raise a head of water for mill purposes, regarded by the law as
beneficial to the public. Such dam may be authorized either
by a general law, as in the case of the mill acts, or by specific
legislative act, as in this act of incorporation. In either case,
the damage to the landowner is intended as an indemnity, not
for casual or occasional damages, which may be afterwards
suffered, by a freshet or flood, but for all the damage he may
suffer by all the flowing which may be caused by the erection
of such dam. It is the erection of the dam, under the authority
of law, which renders it immovable, and which may, and by
reasonable estimate will, cause the lands of an owner to be
more or less flowed, for which the law provides an indemnity.
The right to apply for damages therefore accrues when the dam
is complete and put into operation; and we are of opinion that
the limitation commences and runs from that time. *Heard* v.
*Middlesex Canal,* 5 Met. 81.

                    *Petition for writ of mandamus dismissed.*