[No. 5402.]

Middelkamp v. Bessemer Irrigating Company.

1.  **Nuisance—Legislative Authority—**What is authorized by law cannot be a nuisance.—(110)

2.  **Irrigation—Canals—Duty of Owner as to Seepage—**The owner of an irrigating canal, miles in length, is not under duty to cement or flume it, through its entire length, or any considerable portion thereof, to prevent seepage.—(114)

Where the water escapes only in some small space, and may be checked without unreasonable expenditure, quaere?—(114)

3.  **Damages—**Damages which result from the proper and skillful construction of a canal are taken into account in condemnation proceedings, even though difficult of ascertainment,

uncertain and of doubtful result; the award includes and satisfies all such damages.—(112)

4. **Seepage—Damage to Lands—When Action Accrues**—An action to recover for injuries occasioned to land, by seepage thereto of the waters of a canal, properly constructed under lawful authority, accrues when the lands are first visibly affected and injured. The statute of limitations begins its course from that date. The land owner may recover, in one action, all damages which have been sustained and all prospective damages, to the end of time. After the lapse of six years from the first visible and sensible appearance of the injury the action is barred. —(113)

Where the injury occurs to some small tract or portion of the lands, and later, to other and distinct portions, whether the course of the statute begins from the first injury, quaere?—(120)

5. **Continuing Nuisance**—A canal properly and skillfully constructed by lawful authority but for which, nevertheless, for a great part of the length thereof, water continuously seeps into other lands, doing them injury, is not to be regarded as a continuing injury, even though by fluming or cementing or by other means, the escape of the water may be prevented. Such a structure is a permanent structure, and the injury therefrom is not regarded as abatable.—(109)

6. **Cases Overruled or Distinguished**—The case of Home Supply Company v. Hamlin, 6 Col. App. 341, distinguished.—(118)

*Error to Pueblo District Court*—Hon. N. WALTER DIXON, Judge.

Mr. E. E. HUBBELL, and Messrs. McCORKLE & TELLER, for plaintiff in error.

Messrs. WALDRON & THOMPSON, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

In this action judgment was upon the pleadings. The plaintiff in error, being plaintiff in the court below, in his complaint filed April 11, 1900, alleged, in substance, the corporate capacity of the defendant; plaintiff's ownership, July 24, 1894, and ever

since, of certain lands (describing them) of alleged high value; the defendant's ownership of the Bessemer irrigating ditch by which it diverts large quantities of water from the Arkansas river and distributes it along and under said ditch for irrigation, and domestic purposes; that his lands are on the south side of the Arkansas river about ten miles below the headgate of said ditch; that said ditch is constructed down the south side of the Arkansas river valley upon the high ground to a point several miles below the lands of plaintiff; said ditch, where it passes the lands of plaintiff, is constructed in loose, porous soil underlaid by a bed of shale extending from the line of said ditch to the plaintiff's land; that both the surface of the land and bed of shale underneath, intervening between defendant's ditch and plaintiff's land, have a general slope from the ditch to plaintiff's land; that continuously at all seasons of every year since August, 1894, the defendant has diverted a large volume of water from the Arkansas river through said canal, and that by reason of the loose, gravelly soil through which said ditch is constructed, large volumes of water have escaped continuously since August, 1894, from said ditch through the bottom and sides thereof, by seepage and percolation, and are carried along the bed of shale above referred to, which, by natural means, finds its way to the lands of plaintiff and adjacent lands and is discharged thereon; said seepage water is charged with alkali and destroys and renders worthless the lands of plaintiff for agricultural and other purposes; the amount of seepage water discharged on plaintiff's land as aforesaid, independent of the alkali, is sufficient to drown and render worthless the plaintiff's land to his damage, etc.

A general and special demurrer was filed to this complaint challenging its sufficiency as to stating

any cause of action, together with sundry other points therein raised, which was overruled.

Thereafter, an answer containing, first, a general denial, followed by ten separate and distinct special defenses was filed, to which special defenses demurrers were interposed and sustained, except as to the third and fourth, to which the demurrers were overruled; the plaintiff elected to stand by his demurrer; judgment was entered in favor of the defendant and plaintiff brings the case here upon error for review.

Able arguments, including many citations of authorities, have been presented and carefully considered upon the many vexatious and very important questions raised and discussed, and which are of general interest in this state, but most of which can be eliminated by basing our decision upon the ruling of the court below in overruling the plaintiff's demurrer to the fourth separate and special defense which was, in substance, as follows:

That this action is barred by the statute of limitations, in this, to wit, that this action was not commenced until after the expiration of six years subsequent to the accruing of the right to sue, if any, for the injuries complained of, because said ditch was originally lawfully constructed and completed in 1889 for the conveyance of water for irrigating purposes; that said ditch was a lawful structure, carefully and properly built, by due warrant and authority of law, for the purpose of conveying water to be used for the irrigating of lands lying contiguous or near to the same, and belonging to individual stockholders of either the defendant company or its predecessors in interest. That said ditch was designed, intended and has always continued to be a permanent structure since its completion for the purposes aforesaid, and that water was conveyed into and con-

ducted along said ditch by the predecessors in interest of defendant, and by defendant, since it acquired the ownership of said ditch, and that the use of said ditch, as aforesaid, began in the year 1889, and has been continuously maintained and used for the conveyance of water ever since said year. That more than six years prior to the commencement of this suit the lands of the plaintiff were, to a considerable extent, visibly affected and injured by percolating waters, which percolating waters came from the same sources, and were produced by the same cause, which caused and produced any and all percolating waters that have appeared upon said lands thereafter, and up to the time of the commencement of this suit, and for more than six years prior to the commencement of this suit the plaintiff, or his predecessors in interest, had actual notice and knowledge that their said lands were being continuously injured by percolating waters coming from the same source, and produced from the same cause, that they now assert in this suit is attributable to waters escaping by percolation from defendant's said ditch. Wherefore, defendant avers that the plaintiff's cause of action herein, if it did not accrue at the time of the final completion of said ditch in the year 1889, did accrue when perceptible injury was caused to said premises by said percolating waters, which perceptible injury began and continued for more than seven years prior to the commencement of this suit, and the said plaintiff then and there had the same, if not superior, sources and means of information and knowledge touching the probable extent of the increased future damages which said lands might sustain by reason of the possible or probable augmentation of said percolating waters, from year to year thereafter, upon said premises; and defendant, therefore, says that the injuries complained of being in part sus-

tained and perceptible for more than six years prior to the commencement of this action, this suit is, therefore, barred by the statute of limitations, etc.

And without passing upon the questions of the liability of canal companies in all such cases, or deciding whether in the absence of allegations of negligence in the construction and operation of canals, a complaint states a cause of action, for remote or consequential damages occasioned by waters seeping therefrom; but assuming for the purposes of this case, as is assumed by this defense (which invokes the statute of limitations), that the complaint states a cause of action, it then presents for our determination the question as to when, if at all, a cause of action accrues and the statute begins to run upon account of damages occasioned by waters continuously seeping from an irrigation ditch which was properly built, being operated by due warrant of law, which was designed, has continued, and is intended, to be a permanent structure always, and with no direct allegation of negligence as to the manner of its operation.

In his original brief, it is admitted by plaintiff in error that no negligence was alleged in the complaint and it is claimed none need be; while in a supplemental brief filed later, counsel have taken a somewhat different position wherein they contend the allegation of the construction of the canal through loose, porous soil, and its operation through such soil resulting in continuous seepage, is a sufficient allegation of negligence itself, and they contend that under the fifteenth section of the bill of rights, which declares that private property shall not be taken or damaged for public or private use without just compensation, and, under the provisions of our statutes which impose certain duties in the construction and maintenance of irrigation ditches, the allegation of

seepage, and the damage resulting therefrom, is all that is necessary to be alleged.

It is further claimed the operation of the canal so long as it continues to seep, regardless of the degree of care exercised in its construction and want of negligence in its operation, constitutes a continuous nuisance, giving rise to a new cause of action each successive day until the seepage shall be abated, and that plaintiff would have the right to bring successive suits. It is further urged if this position is not accepted, and we should hold only one suit can be maintained, that, regardless of the period of time the injury has continued, the seepage constitutes a continuous nuisance, and plaintiff is entitled to recover in this suit for all injury inflicted during the six years next preceding the institution of his action, and in their brief counsel state:

"What, then, is the cause of action set up in the complaint? It is not that the ditch was constructed; nor, primarily, that it was improperly constructed.; but that defendant has permitted it to be, during nearly six years last past, in such a condition as to allow the escape of water  *  *  *. That is the offense, the improper use of a lawful structure, the neglect of defendant to discharge its duty to stop the seepage  *  *  *. Such being the ground of complaint, there was, as in all cases of a continuing nuisance, a new cause of action each day. Every day that passed in which the defendant neglected to flume, or otherwise improve that portion of the ditch at which this leakage occurred  *  *  * witnessed a wrong for which a recovery is allowed by law. The constant wetting of the land is the nuisance, and its cause is the porous condition of the walls and bottom of the ditch, left thus by defendant's fault. This wrong has no necessary connection with the location and construction of the ditch."

With this line or argument we cannot agree, and think the criticism to be offered is more applicable to the basis upon which it is assumed than to the argument itself, for we cannot conceive how the seepage has no connection with the location and construction of the ditch, including its future operation, and we think those matters the very essence of the cause of the injury. The pleadings here show this ditch was constructed in the ordinary and usual manner. The seepage is a necessary result caused by the character of the land through which the canal was, and of necessity had to be, constructed; the seepage will therefore continue, and the same injury result from it as long as the ditch is used, without change from any cause but human labor. The cause of the injury being permanent, therefore, the injury itself is permanent. As a general rule, it is held a cause of action for a wrongful act, whether negligent or willful, or for the breach of a contract, or duty, accrues immediately upon the happening of the wrongful act, or the breach, even though the actual damages resulting therefrom may not accrue until some time afterwards, and the statute, therefore, begins to run upon the occurrence of the act or the breach complained of, and not from the time of the damage resulting therefrom.—Vol. 19, Am. & Eng. Enc. of Law (2d ed.), p. 200; *Ipswich Mills v. County Commissioners,* 108 Mass. 363; *Frankle v. Jackson, Receiver, etc.,* 30 Fed. 398; *Rowlstone v. Chesapeake & O. Ry. Co. et al.,* 54 S. W. (Ky.) 2; *Louisville & Nashville R. R. Co. v. Orr,* 91 Ky. 109; *Chicago, etc., Co. v. O'Connor,* 42 Neb. 90; *Chicago, etc., Co. v. Loeb,* 118 Ill. 203; *Heard v. Props. Middlesex Canal,* 5 Mets. (Mass.) 81; *Omaha, etc., Co. v. Moschel,* 38 Neb. 281; *The Chicago & Eastern Ill. R. R. Co. v. McAuley,* 121 Ill. 160; *Call v. County Commissioners,* 68 Mass. 232; *St. Louis, etc., Co. v. Morris,* 35 Ark.

622; *Navigation Co. v. Thoburn,* 7 S. & R. (Pa.) 411; *Pratt et al. v. Des Moines N. W. Ry. Co. et al.,* 72 Ia. 249; *Ill. Con. R. R. Co. v. Ferrell,* 108 Ill. App. 659; *Strickler v. Midland Ry. Co.,* 125 Ind. 413; *Noonan v. Pardee,* 200 Pa. St. 474; *Van Orsdol v. The B., C. R. & N. R. Co.,* 56 Ia. 470.

But in cases of waters escaping by percolation and seepage from irrigation ditches, owing to the uncertainty of its course and extent, the length of time required after the construction and operation of such properties for it to develop, as to its uncertain course and slow stage of career under the ground, depending upon the conditions of the earth through which it must pass, the lay of the land, and all other elements tending to make uncertain its future location and extent, at least until it commences to show its results at certain places, we do not think the rule laid down by the above cases would make a practical, equitable or fair test as to the time when a cause of action for damages in this class of cases should be held to accrue, or was so intended by the framers of our statute. But we cannot agree with plaintiff that the seepage makes of the canal a nuisance for which successive actions can be brought until it is abated, for then the statute of limitations would never commence to run in such cases. We do not think such a position is tenable, as it is well settled that a work which is authorized by law cannot be a nuisance, and that a public nuisance cannot exist in acts which are authorized by legislative sanction, even though the act complained of might, independent of statute, be a nuisance.—High on Injunctions (3d ed.), § 767; *Danville, etc., Co. v. Commonwealth,* 73 Pa. St. 29; *Davis et al. v. Mayor of N. Y.,* 14 N. Y. 507; *Easton and McMahon v. N. Y., etc., Co.,* 24 N. J. Eq. 49; *G. R. & I. R. R. Co. v. Heisel* 38 Mich. 62; *Harris v.*

*Thompson*, 9 Barb. 350; *C. & E. I. R. R. Co. v. Loeb*, 118 Ill. 203.

It is also well settled, that which the law authorizes cannot be a nuisance such as to give a common-law right of action.—*Transportation Co. v. Chicago*, 99 U. S. 635; *Delaware, etc., Co. v. McKeen*, 52 Pa. St. 117; *Boothby v. Androscoggin River R. R. Co.*, 51 Me. 318; *Hamlin v. Chicago, etc., Ry. Co.*, 61 Wis. 515; Gould on Waters (2d ed.), § 296; Sedgwick on Damages, vol. 1 (7th ed.), p. 207; Wood on Nuisances, p. 21.

But assuming, if, through natural causes, waters escape from a canal by seepage to the injury of adjacent or remote lands the owner will be entitled to compensation for the injuries thus sustained, his right of action cannot be predicated upon the theory the canal is a nuisance, for the injury which he has sustained is an injury, the inflicting of which is expressly authorized by the sovereign power; being a lawful injury, his right of action must accrue under the constitution and statutes, and, if it were not for them, it is questionable whether any liability could be held to exist, and in some of our adjoining sister states it has been held that the owners of irrigation canals, when built with due care and so operated, are not liable for seepage therefrom upon distant proprietors except in cases of negligence.—*Fleming v. Lockwood*, 92 Pac. (Mont.) 962; *Howell v. Big Horn, etc., Co.*, 14 Wyo. 14.

But assuming under our constitution and legislative enactments the owners of canals are liable for damages to distant proprietors occasioned by waters seeping therefrom, although not negligent in their construction or operation, they are not insurers and have never been so held by this court. Besides, the section of the constitution which provides that private property shall not be taken or damaged for pub-

lic or private use without just compensation is insep-
arably connected with the exercise of the power of
eminent domain, and in suits for damages we think
similar rules and tests, so far as applicable, should
be applied as in condemnation proceedings, wherein
this court is committed to the general rule that in the
assessment of damages it should include all damages
arising to the owner of land from any and every
physical effect produced by the construction and use
of the canal, if constructed according to the provi-
sions of the statute and with proper care and skill,
whether they are damages to be clearly seen and eas-
ily estimated, or are uncertain and of doubtful result
(except such as result from its negligent construc-
tion or use), and that such a judgment is final and
conclusive, and the owner of the land cannot main-
tain a subsequent action for damages which should
have been, but were not, considered or assessed by
the jury.—*D. C. I. & W. Co. v. Middaugh,* 12 Colo.
434 (and cases there cited). The same rule is applic-
able where special acts allow the construction of a
specific property and provide that actions upon ac-
count of damages for their construction and opera-
tion shall be brought within a certain period.—
*Heard v. Props. Middlesex Canal Co.,* 46 Mass. 81;
*Davis v. City of New Bedford,* 133 Mass. 549.

Our statute in terms begins to run from the time
the cause of action accrues. When the cause of ac-
tion accrues is a judicial question, and to determine
it in any particular case is to settle a general rule of
law for a class of cases, which must be founded upon
reason and justice. In framing and applying such
rules of law it is the duty of the court to consider the
interests which are liable to be affected, and if those
interests are of a public or *quasi* public character, or
if they concern the welfare of the community in
general, it is presumed (in the construction of such

statutes) that rules would be so framed and applied as to afford them every reasonable protection. We think by adopting the rule that the statute of limitations begins to run from the date the lands were first visibly affected and injured by the seepage which, and with its continuance from the same source, caused the injury for which the suit is brought is not only in compliance with the strict letter of our statute, but a rule which will prove the most equitable, fair and just to all, and which, in our opinion, is the rule supported by the best reasoned authorities in similar cases.—Gould on Waters, § 416; *Powers v. City of Council Bluffs*, 45 Ia. 652; *Town of Troy v. Cheshire R. R. Co.*, 23 N. H. 83; *Bizer v. Ottumwa Co.*, 30 N. W. 172; *Van Orsdol v. B., C. R. & N. R. Co.*, 56 Ia. 470; *Stodghill v. C. B., etc., Co.*, 53 Ia. 341; *Guinn v. Ohio R. Co.*, 46 W. Va. 151; *Fowle v. N. H., etc., Co.*, 112 Mass. 334; *Fowle v. N. H., etc., Co.*, 107 Mass. 352; *Bird et al. v. Hannibal St. J. R. R. Co.*, 30 Mo. App. 365; *City of North Vernon v. Voegler*, 103 Ind. 314.

It will be noted by this ruling parties bringing suits for damages to lands for seepage from canals will have an advantage over the party through whose land the canal is constructed, in this, while in the condemnation proceeding it requires all such damages to be anticipated and assessed in favor of the party through whose land the canal is to be constructed, which is often done prior to the construction of the canal; in this class of cases the owners of such lands will have six years after such lands are visibly affected by the seepage within which to ascertain the result of its course and extent of such damages.

The contention the seepage makes of the canal a nuisance which can be abated by fluming or cementing that portion where the waters escape, or by some

8

other such means, and until done, the company operating it being in the wrong it creates a continuing nuisance for which a new action can be brought each day—is not supported by the pleadings or tenable under conditions existing in Colorado. It is true the complaint alleges this seepage occurs where the canal passes the lands of the plaintiff, yet it does not allege its length there, or state this is the only place the canal seeps, or that it is some short space which could by a reasonable expenditure be checked, and outside of the question of common knowledge as to the condition of such ditches, when we consider four other similar cases are pending here against the same defendant, consolidated for argument with this by the same counsel, we might be justified in indulging in the presumption this seepage occurs for a long distance along the line of the canal, and that it is no exception to the general rule of large ditches, where seepage usually exists from their headgate along down their line until the ditch gradually winds its way from the river upon the level lands. All irrigation canals must, of necessity, seep more or less along this portion of their lines, and will so continue until prevented by other means than ordinary diligence in their construction, and we do not think the time has yet been reached in this state, when the owners of such enterprises can be held to such a high degree of diligence in their construction as to be compelled to prevent them from seeping at all, or be subject to successive suits for any injury which it is not practicable to remedy, and which logic would mean to prevent the construction of a large number of ditches and reservoirs and thus retard the development of our state; as the result of such a rule would mean, in most cases, that the costs or means to prevent the seepage would be far in excess of the value of the property so damaged; for instance, in

one case it might take ten or fifty thousand dollars to flume or cement a certain portion of a canal in order to prevent it from seeping; while the total value of the land to be protected, or the damage to it, might not exceed one-tenth of this amount; in such cases the property so damaged, not being touched by the right of way, could not be taken by the canal in its construction, and the owners of the canal, in order to avoid successive actions, would be compelled to expend a much greater amount than the value of the property to be protected. We do not think it was the intention of the framers of our constitution to place such an extraordinary burden upon a class of enterprises so vital to the future development and prosperity of our state; for by reason of conditions existing in this arid region the construction of irrigation canals was always deemed of paramount importance, the right of property in the waters of our public streams for irrigation purposes existed prior to any legislation on the subject—*Coffin et al. v. Left Hand Ditch Company,* 6 Colo. 443. Such enterprises have been specially favored and their rights recognized prior to the act of congress of 1866 recognizing such rights, followed by our constitution re-recognizing them and adding additional privileges which, in turn, was followed by the enactment of statutes from time to time granting special privileges to persons and companies engaged in such enterprises.

The contention, if sustained, that one suit can be brought at any time and recovery had for all damages occasioned by waters seeping upon such lands during the six years preceding the commencement of the action, regardless of how long the injury has continued from the same source, would be to abrogate the statute of limitations or to hold that it did not apply to this class of cases, otherwise it is only consistent with the theory that each day's injury

constitutes a new cause of action for which successive suits could be maintained, as the two contentions are inseparable, and are based upon the continuance of the seepage as a common-law nuisance, and the decisions in support of this position are no more applicable to cases of this character than those sustaining the doctrine of riparian rights, which has never been recognized in this state, or any state or territory where irrigation is necessary. The injury here complained of is a continuing one; the waters which caused the damage one year are not entirely the same as those which cause or continue the injury the following year; it is occasioned by new waters continuously seeping, and it is common knowledge that where such seepage waters can and have been cut off and cease to continue by the construction of drainage canals or otherwise, the lands injured will, in time, drain themselves and be restored to their natural condition and again become productive; hence, the theory that where the lands are only partially destroyed by seepage one day, month or year, although all affected (as admitted by the pleadings in this case), the continuance of the seepage causes the damage to increase from year to year until it causes the total destruction of the land so far as productiveness is concerned, and for that reason a suit could be brought at any time and recovery had for that per cent. or portion of the damages accruing within the six-year limit—would be to allow the plaintiff to bring an action upon the continuance of the same cause, which originally started, continued to cause and increased the same damages barred by the statute.

Seepage, when it commences to affect land, usually gradually increases in quantity upon the lands affected, not necessarily because there is an increase in its escape from the canal, but from the

fact that it travels slowly under the ·ground, is being supplied faster than it can escape through the earth underneath, and often reaches places where it cannot travel or escape nearly so fast as it is being supplied, the result of which causes it to accumulate at such places and it is then forced to the surface of the earth, in such cases causing the total destruction of the land so far as agricultural purposes are concerned.· But to say that a suit could be brought at any time for the per cent. of damage caused during the six years next preceding the date of the bringing of the action, can only be to hold that a new cause of action had accrued, and where no change has taken place in the manner of the operation of the ditch by its enlargement or otherwise, and where nothing different has been done or happened to create them and is inconsistent with any reasons supported by any line of authorities which we have been able to find, except those holding the continuance of the injury, creates a new cause of action for which successive suits can be brought from day to day. In this case when the plaintiff's lands were first visibly affected and injured by those seepage waters he had a cause of action against the defendant, not only for the damage then inflicted, but for all future damages which might be sustained by reason of the continuance of the seepage, including its prospective augmentation (except those caused by acts of negligence in the future maintenance of the canal other than as claimed by the pleadings in this case relating to its location, construction and operation through certain kinds of earth), and such an action could have been upon the assumption of the permanent maintenance of the canal in its then present condition for all time, and we think it would be in conflict with the great weight of authorities and inconsistent with sound reasoning to hold that such a cause of action is sus-

ceptible of division, and, if permissible, would be impracticable in its operation to permit of the splitting of this kind of a cause of action which would be impossible to divide accurately, and we do not think it was intended that they should be excluded from the operation of the statute of limitations.

Another reason why a rule of this kind would not be equitable or just is, it would allow the owner of the land to select any time when the value of his property was the highest to bring his suit and such actions could be brought a great many years after the damage had first commenced and after the land had greatly enhanced in value, often upon account of the construction and operation of the very ditch which, in years to come, it would be claimed was the cause of the damage, and after the water therefrom had made the real value to the land; and, again, such a ruling would be to open the doors of the courts of this state to hundreds of such cases, where for many years gone by, it has been assumed and accepted as the settled law within this jurisdiction, that no cause of action could, at this late date, be maintained upon account of such continuous seepage, and such a rule would leave no method or test by which the investors of capital in such enterprises could ever ascertain as to the ultimate extent of their liability upon account of such enterprise, and would thus tend to prevent the development of the state along the lines upon which its principal prosperity must depend.

It is contended the decision of our court of appeals in the case of *The Consolidated Home Supply Ditch and R. Co. v. Hamlin,* 6 Col. App. 341, is conclusive here and should be followed, and counsel say the court there lays down four propositions of law, all of which are strictly in accord with their contention here. We have given that case very careful consideration and are unable to entirely harmonize

it within itself; the action was for damages occasioned to lands by seepage from two irrigation ditches running through the land. The first opinion was delivered by Mr. Justice Reed, who appears to have reached four conclusions, as follows:

"  *   *   * 1st. That the court did not err in its application of the statute of limitations in restricting it to the six years preceding the bringing of the action.

"2d. That the injury being one that could not be foreseen nor the damage estimated, no cause of action arose from the construction of the ditch, such act being lawful, and a cause or causes of action only arose subsequently, in which damage to the time of the bringing of suit, only, could be recovered.

"3d. That the nuisance of trespass was continuous, and the subsequent damage continually being incurred, that the ditch company were liable until the nuisance was abated and the cause of damage removed.

"4th. That successive suits might be brought and maintained for the damages sustained subsequent to the former recovery."

The opinion on rehearing, delivered by Mr. Justice Thomson, expressly repudiates the last three conclusions reached by Mr. Justice Reed in which he, Thomson, held that all damages resulting from the operation of the ditch were recoverable in one action; that the ditches in question were necessary, the country required them, and it is presumed they will be maintained for an indefinite period; that the seepage was a necessary result of the character of the land, and will, therefore, continue and the same injury result from it so long as the ditches are used. The causes of the injury being permanent, the injury itself is permanent, and the verdict must be assumed to include the entire dam-

age sustained, so the plaintiff would be entitled to no further action by reason of a continuance of the nuisance. Mr. Justice Reed remaining silent upon rehearing, we presume he consented thereto and changed his mind as to most of the conclusions reached in the original opinion. His conclusion upon the statute of limitations does not appear to have received special consideration upon rehearing, unless modified by the ruling that only one action could be maintained; but in that case (not like this), the plea raising it was replied to by general denial, it was made an issue and evidence submitted, and the court instructed, the only damage the jury could consider, in any event, are damages that accrued within the six years, and the record shows, as stated by Mr. Justice Reed, "although the seepage commenced in 1885, there was but a comparatively small amount of land injured or destroyed until 1889." Suit was brought August 17, 1892, which extended its time back to August 17, 1886, and, under the evidence and instructions, we cannot say that any recovery was allowed for lands affected prior to the six-year period, and think the records of that case tend to show that no damages were allowed for such lands, but only for those to which the injury commenced within that time; the trend of that case being to make the dividing line as to the lands affected, which was only two or three acres, prior to the six-year limit, and we are not prepared to say (which is not necessary to determine here), that conditions might not arise where a tract of land owned by one person shows signs of injury by seepage upon one portion or subdivision only at one time, and upon another portion or subdivision at a later period, that suit might not be brought for damages occasioned to that particular tract or subdivision last affected, and that such an action could not

be held to be barred by the statute of limitations upon account of the injury sustained to the first portion or subdivision of the farm for which a right of action had become barred upon account of its having been so visibly affected and injured prior to the six-year period, and we will not say now that, in all cases, this could be termed a division of the plaintiff's case; but we have not such a case here to determine. In this case, it will be noted, the plaintiff elected to treat his cause of action and land as a whole, in that he makes no distinction as to the dates of the destruction of the different portions of the entire tract. The plaintiff states all his lands were so destroyed, etc., during a certain period, and the special defense accepts this condition as stated, and applies the statute to the entire tract as a whole, stating that the lands for which the damage is complained of was so visibly affected, etc., for more than six years prior to the bringing of the action. Other cases cited are not applicable to conditions existing in the construction and operation of an irrigation ditch. The case of *Wright et al. v. Ulrich,* 40 Colo. 437, involved the construction of a slaughter house, where one operated had been burned, clearly and abatable common-law nuisance.

The case of *Power v. Munger,* 52 Fed. 705, was an action for negligence resulting in the setting out of fires by a locomotive.

*St. L., I. M. & S. Ry. v. Biggs,* 52 Ark. 240, was the negligent construction of a railway embankment which caused the injury; the dictum being that its maintenance was a common-law nuisance which could be abated, which cited in support of this view Wood on Nuisances, sec. 865, upon the subject of continuing common-law nuisance.

The case of *Town of Troy v. Cheshire R. R. Co.,*

23 N. H. 83, does not sustain the position contended for.

The case of *Valley Ry. Co. v. Franz,* 43 Ohio St. 623, involved the improper construction of a dam which caused the lands of plaintiff to be washed away; the defendant company having promised, from time to time, to remedy the defect, but failed, and its default in this behalf was deemed an important element in continuing the liability.

The case of *Sullens v. Chicago, etc., Co.,* 74 Ia. 659, recognizes the statute of limitations begins to run from the time the first overflow occurred, which is in line with former decisions in that state.

The case of *Drake v. C., R. I. & P. Co.,* 63 Ia. 302, was for damages caused by the construction of an embankment without proper ditches and culverts, which afterwards were made, and were successful until obstructed, and the Iowa court there held the statute did not apply for a later injury to a former one where it was not continuous, but distinguished it from *Power v. Council Bluffs,* 45 Ia. 652, which sustains our position here.

The case of *Bare v. Huffman,* 79 Pa. St. 73, concerned a common-law nuisance susceptible of improvement, and the gist of the reasoning there was, the presumption would be that necessary steps would be taken to prevent a recurrence of the injury complained of, and not having been done, the second action might be brought.

In *Danielly v. Cheeves,* 94 Ga. 263, it was also held, as stated by the court, "the plaintiff has a right to assume it will be abated."

*Wabash Co. v. Pearson,* 120 Ind. 426, involved the maintenance of a bridge where the court held the cause of action did not accrue until the accident happened, although the bridge had been thus constructed for thirteen years.

The case of *Omaha, etc., Co. v. Standen,* 22 Neb. 343, was where a bridge caused the overflow which might or might not ever occur again.

The same principle is announced in *Clark et al. v. Dyer,* 81 Texas 339.

The case of *Hill et al. v. Empire State-Idaho M. & D. Co.,* 158 Fed. 881, was for damages to lands occasioned by the discharge from reduction works of large quantities of waste material containing poisonous matter into a stream which, in time of high water, were carried down the stream, obstructed it in places, and caused the overflow of the lands complained of, as the court there states, "due to the operation of a lawful enterprise in an unlawful or careless manner," being a case not for continuing damages, but for such as might or might not again occur, as stated in the opinion:

"It was only by reason of the intervening agency of high water, the effect of which was uncertain and contingent, that the defendant's acts indirectly resulted in the injury to plaintiffs' land."

The cases of *C. & O. Canal Company v. Hitchings,* 65 Me. 140, and *Van Hoozier v. H. & St. J. R. R. Co.,* 70 Mo. 145, both admit the rule is well settled where injury to land occasioned by the commission of a nuisance is of such a permanent character that it goes to the entire value of the estate, recovery for the whole should be had in a single suit, and no other action could be maintained. But distinguish from where, by reason of the diversion of a stream of running water, the plaintiff's land is overflowed and his crops injured, and hold as such injury does not go to the entire value of the estate, but being of yearly recurrence is susceptible of periodical apportionment; this, evidently, upon the theory that there may or may not be floods and hence may or

may not be damages during the season, which would not apply to the seepage from a canal.

The case of *Reed v. State*, 108 N. Y. 407, is a case of admitted negligence in the construction of a dam across the stream and valley forming a reservoir wherein the water arose about thirty feet and where the court held the engineers were guilty of gross negligence in its·construction and in not taking proper precaution for its maintenance, and the decision in that case was not on the theory of the permanent appropriation of the land flooded. After summing up most of the above and sundry other authorities, in their reply brief counsel for plaintiff in error state:

"The other cases cited all discuss improvements which are permanent, and properly hold that when the structure itself is permanent, and is the cause of injury, the injury is permanent, and all damages are to be recovered in one action, the right to which accrued with the beginning of the injury. With this law, we have no controversy."

We think this law clearly applicable here, for the reasons hereinbefore stated, as well as those given in the cases cited sustaining this position; this structure and irrigation canal is itself permanent, and, when used for the purposes for which it was authorized and is intended, it is the cause of the injury. The injury is permanent, and, in the language of Mr. Justice Thomson, in the *Home Supply Company case, supra,* the ditch in question was necessary to render the land through which it passes productive, the country required it and it is presumed it will be maintained for an indefinite period of time. The pleading is it was constructed in the ordinary and usual manner, and the seepage a necessary result of the character of the land; the seepage will, therefore, continue, and the same injury result

from it as long as the ditch is used. The cause of the injury is permanent and the injury itself is permanent.

The judgment of the district court is affirmed.

Decision *en banc*                              *Affirmed.*

CHIEF JUSTICE STEELE, Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE dissent.